366 So.2d 788 (1978)
BAY MANAGEMENT, INC., a Florida Corporation, Appellant,
v.
BEAU MONDE, INC., a Condominium, a Nonprofit Florida Corporation, Appellee.
No. 77-1706.
District Court of Appeal of Florida, Second District.
December 29, 1978.
Rehearing Denied January 29, 1979.
*790 William S. Jonassen, Indian Rocks Beach, for appellant.
William F. Casler, St. Petersburg Beach, for appellee.
SCHEB, Judge.
Appellant Bay Management challenges a declaratory judgment requiring it to perform certain maintenance services under the terms of a condominium maintenance agreement and a recreational and garage lease between it and appellee Beau Monde. We affirm in part and reverse in part.
After Beau Monde was organized as a condominium in 1972, the developer, on behalf of Beau Monde, entered into a 25-year maintenance agreement and a 99-year recreational and garage lease with Bay Management. In October 1976 the developer turned over control of the condominium association to the unit owners. Thereafter, in an attempt to clearly define its responsibilities, Bay Management delivered two lists of services to the Beau Monde Condominium Association. In the first, it itemized its acknowledged maintenance responsibilities. In the second, it identified certain maintenance services as the sole financial responsibility of the Association.
Beau Monde, unsatisfied with Bay Management's disclaimers in the second list, petitioned the circuit court for a declaratory judgment as to Bay Management's obligations in respect to the services disclaimed.
The trial court determined that the two agreements imposed the obligation on Bay Management to perform the following disputed services:[1]
A. Driveway and Guest Parking:
1. Repaint individual space bumpers and numbers as needed.
2. Repaint lines and traffic markings as needed.
3. Repaint fixture poles as needed.
4. Repair and maintain Beau Monde sign.
B. Grounds:
1. Replace and/or add shrubbery as needed.
2. Install wooden edging throughout grounds as needed.
3. Lay sod as needed.
.....
F. Atrium:
1. Repaint atrium pool as needed.
2. Repair and replace fountain pumps.
3. Repair and maintain fountain.
G. Recreation Room:
.....
2. Provide soft goods for restrooms and shower facilities.
H. Lobby:
1. Repair and rehabilitate front mat.
2. Repair and maintain electronic lock mechanism.

*791 3. Repair building intercom and security system including repair to individual units within apartments.
4. Repair TV surveillance camera.
5. Update building indexes.
I. Corridors:
1. Repaint any wall sections according to need.
2. Replace any damaged carpet.
3. Repair and replace all fire extinguishers.
4. Perform pest control service.
5. Rehabilitate all elevator lobbies.
6. Paint sections of stairwells needing attention.
7. Clean, disinfect, repair and rehabilitate both trash chutes, trash rooms and all trash doors (18).
8. Pick up newspapers left on each floor (20 stops).
9. Repaint storage rooms and laundry facilities as needed.
J. Building Equipment:
1. Maintain and repair fire pumps.
2. Maintain building antenna and amplifier system and wiring of same.
3. Maintain fire alarm system.
K. Miscellaneous Services:
1. Provide weekend cleaning of major public areas.
.....
3. Provide for pest control.
4. Provide and replace all signs throughout the project.
5. Termite bonds.
In construing a contract the court must consider the objects to be accomplished, and to this end should place itself in the position of the parties when the contract was entered into. Florida Power Corp. v. City of Tallahassee, 154 Fla. 638, 18 So.2d 671 (1944). A corollary to this is that the court should arrive at an interpretation consistent with reason, probability, and the practical aspect of the transaction between the parties. Blackshear Manufacturing Co. v. Fralick, 88 Fla. 589, 102 So. 753 (1925). While the trial court attempted to adhere to these principles in the instant case, it erred in going further and holding that Bay Management was required to perform certain of the maintenance tasks simply because the agreements did not specifically exclude these tasks from its responsibility. In effect, the court held that Bay Management was required to perform all maintenance services unless the agreements specifically said it would not perform these services. When a contract is clear and unambiguous, as the agreements were in this case, the court cannot give it any meaning beyond that expressed. Hamilton Construction Co. v. Board of Public Instruction, 65 So.2d 729 (Fla. 1953).
We now turn to a review of the agreements themselves to determine if the maintenance tasks in question were the obligation of Bay Management. Article VI of the recreational and garage lease (under which Bay Management was lessor) contained the following provision:

MAINTENANCE OF PREMISES: Lessor has the obligation to maintain the leased premises in good order, condition and repair. Lessee has no obligation whatever to maintain the leased premises or any of the improvements thereon. Lessee agrees to permit no waste, damage or injury to said premises. At the expiration of the Lease created hereunder, Lessee shall surrender the premises in good condition, reasonable wear and tear excepted. Lessee agrees that the building, the electrical system, water systems, fixtures, equipment and all items of personalty within and upon the leased premises, shall be under the control of the Lessor or its agents, and that all operation, upkeep, repairs and replacement of such items shall be done by and at Lessor's expense. Lessor further agrees that it shall provide, at its expense, any and all utility services required or necessary in the operation of the demised premises. The Lessee shall not change the design, color, materials, or appearance of the improvements now or hereafter placed upon the demised premises, any of the furniture, furnishings, fixtures, machinery or equipment contained therein, without the Lessor's prior written approval.
*792 Under this provision Bay Management undertook a comprehensive responsibility for the maintenance of the recreation and garage areas. On the assumption that the parking area referred to is within the confines of the leased premises,[2] we conclude that Bay Management was responsible for repainting the individual space bumpers (A-1) and the fixture poles for the driveway and guest parking area (A-3). The maintenance agreement was much less comprehensive, requiring only specifically enumerated services. It provided that Bay Management would:
3. [M]aintain, service and repair as to ordinary wear and tear caused by usage and the elements, all public walkways and roadways used for ingress and egress to the condominium property.
.....
5. [P]rovide, maintain and care for the lawn and shrubbery service and all onsite walkways on the condominium property; however, the Maintenance Contractor shall not be responsible for any damages caused by any act of God, which shall include, but not be limited to, wind, flooding, hurricane, frost or freezing, etc.
6. [P]rovide service and maintain lighting for the exterior of the condominium building, including the lighting of the hallways and other portions of the common elements.
.....
8. [B]e responsible for complete maintenance of elevators and roofs.
9. [B]e responsible for the complete maintenance of the Lobby Area of the Condominium Parcel together with the maintenance of all furniture and equipment in said Lobby Area.
10. [B]e responsible for ordinary wear and tear of seawalls and shall be responsible for the replacement of or repair of seawalls for any said damage caused by any act of God, which shall include but not be limited to wind, flooding, hurricane, and extraordinary tides.
.....
12. [K]eep the exterior of said condominium building painted and shall furnish the necessary repairs to preserve the exterior appearance of said building against ordinary wear and tear. However, the Maintenance Contractor shall not be responsible for the washing of windows or replacement of same, and shall not be responsible for the maintenance of screens that enclose screen porches. The Maintenance Contractor further agrees to keep the condominium building and the areas included in the common elements, which shall include the parking area therein, "broom swept" and neat and presentable in appearance at all times.
.....
17. [M]aintain, service and repair the water and sewer main lines and all connections therewith that lien within the easements of the above described property.
We think paragraph 3 is sufficiently broad to require Bay Management to repaint the lines and traffic markings as needed (A-2). And while we conclude that paragraph 5 requires that Bay Management replace shrubbery (B-1) and lay sod (B-3), both as needed, we do not think this provision requires it to make new additions as opposed to replacements. Nor would it require Bay Management to assume responsibility for any shrubbery or grass damaged or destroyed by an act of God.
Paragraph 9, we think, is sufficiently comprehensive to require Bay Management to perform lobby maintenance as specified in H. However, maintenance responsibility *793 for the intercom and security system (H-3) does not extend to the repair of individual units within apartments. Further, we conclude that the requirement to update building indexes (H-5) is validly imposed upon Bay Management insofar as any displayed directory, but this would not require maintenance of office files used for business purposes.
We conclude that paragraph 12 of the maintenance agreement requires Bay Management to pick up excess newspapers from the various floors (I-8). Paragraph 9 dictates maintenance of the main elevator lobby only if appurtenant to the main lobby (I-5). No requirement is imposed that Bay Management maintain elevator lobbies generally, since its obligation is only derived from its duty to maintain the main lobby.
In our opinion paragraph 12 of the maintenance agreement does require Bay Management to maintain the exterior of the Beau Monde sign (A-4); however, Bay Management would not be required to maintain any internal mechanism of the sign. As to other signs at the condominium (K-4), Bay Management is required to repair and replace only those signs that were on the exterior of the building at the inception of the agreement in 1972.
Finally, we think the trial judge could have fairly concluded that paragraph 17 of the maintenance agreement was sufficiently broad to impose responsibility on Bay Management for repairing and replacing fountain pumps (F-2), and to repair and maintain the fountain (F-3).
We think the trial court erred in imposing responsibility on Bay Management to perform the remaining disputed items of maintenance. Our careful review indicates that Bay Management did not undertake the responsibility as to items B-2 (wooden edging); F-1 (repaint atrium pool); G-2 (soft goods for bathrooms and showers); I (corridors, except as mentioned in respect to I-5 and I-8); and the items listed in J (building equipment) and K (miscellaneous, except as to K-4).
One final observation: At trial various documents were introduced and counsel presented detailed arguments as to the construction the court should place upon the agreements. Counsel then orally stipulated that the disclaimed services had been previously performed by Bay Management, though no testimony was taken on this or any other issue. Counsel for Beau Monde argues here, as he did before the trial court, that Bay Management's previous course of conduct defined its legal responsibilities under the agreements. He correctly points out that where a contract fails to define with certainty the duties of the parties, and the parties by their conduct have placed a reasonable construction on it, that such construction should be adopted by the court. Blackhawk Heating & Plumbing Co. v. Data Lease Financial Corp., 302 So.2d 404 (Fla. 1974) (quoting Shouse v. Doane, 39 Fla. 95, 21 So. 807 [1897]). Counsel for Bay Management responds that its expanded services in the past were provided pursuant to a contract with the developer during the promotional and sales period. Thus, Bay Management contends such conduct was not interpretive of the agreements now before us. As noted previously the agreements in question clearly defined Bay Management's maintenance responsibilities. Since no evidence was offered concerning the circumstances under which the disclaimed services were performed, we must reject Beau Monde's argument that the trial judge's conclusions be sustained in their entirety based on past performance by Bay Management.[3]
The trial court's judgment is affirmed, subject to the qualifications mentioned above, as to items A, B-1, B-3, F-2, F-3, H, I-5, I-8, and K-4. The judgment is reversed as to items B-2, F-1, G-2, I-1 *794 through -4, I-6, I-7, I-9, J, K-1, K-3, and K-5.
GRIMES, C.J., and OTT, J., concur.
NOTES
[1] For convenient reference we have numbered the specific items listed under A, B, F, G, H, I, J and K. As the court ruled favorably to Bay Management on certain other items and no cross-appeal was taken, those items are omitted from the list.
[2] Determining whether the recreational and garage lease or the maintenance agreement applies to specific maintenance services has, in some instances, posed a problem to this court. From the condominium documents introduced into evidence it is not completely clear whether the driveway and guest parking area are within the confines of the more comprehensive recreational and garage lease. If they are not within the confines of the lease, then there would be no authority under the maintenance agreement to require Bay Management to perform the services itemized in A-1 and A-3.
[3] In fairness, while the trial court noted in the declaratory judgment that past performance by Bay Management was supportive of its decision, the court went on to say, "[E]ven absent said previous course of conduct of the parties, the Court would have been compelled to have arrived at the same conclusion as set forth above."