558 So.2d 1081 (1990)
Richard J. MONCELLO, Appellant,
v.
FEDERAL INSURANCE COMPANY, etc., Appellee.
No. 89-668.
District Court of Appeal of Florida, Fifth District.
March 22, 1990.
Patrick M. Magill, Orlando, for appellant.
Craig L. Brams of Eubanks, Hilyard, Rumbley, Meier and Lengauer, P.A., Orlando, for appellee.
GOSHORN, Judge.
Richard Moncello appeals the summary final judgment entered in favor of Federal Insurance Company. Because the plain language of the policy provides coverage to Moncello, we reverse.
The facts are not disputed. Moncello is a real estate broker who was employed by Active One Realty, Inc. (Active) as an "independent contract broker." A professional malpractice policy issued by Federal Insurance Company (Federal) to Active was in effect during Moncello's employment. As an "independent contract broker," Moncello was an insured as that term is defined by the policy. The policy in question was issued on a "claims made" basis covering only wrongful acts reported to Federal during the policy period.[1]
Marilyn Walden filed suit against Moncello alleging acts which admittedly took place prior to the inception date of the policy. Moncello duly notified Federal of the claim, but the company refused to provide coverage or defend the suit on the *1082 ground that Moncello was not "acting on behalf of Active One Realty, Inc. during the realty transaction sited (sic) in the law suit." After employing his own attorney, Moncello successfully defended the action, and later filed suit seeking a declaratory judgment that Federal had wrongfully refused to defend the Walden suit and was required to reimburse Moncello for his incurred defense costs.[2]
Federal moved for summary judgment, contending the policy did not provide coverage. The trial judge, granting Federal's motion, found:
[A]lthough the claims against Moncello were lodged during his association with Active One Realty, Inc., at the time of the tortious acts, Mr. Moncello was not in any way associated with Active One Realty, Inc., and, therefore, is not entitled to any benefits or defenses that might be provided under the Federal Insurance Company policy issued to Active One Realty, Inc.
In support of the trial court's decision, Federal primarily relies on two cases: Padberg v. The Travelers, 197 Cal. App.3d 1161, 243 Cal. Rptr. 266 (1987) and Swift v. American Home Assurance Co., 22 Wash. App. 777, 591 P.2d 1216 (1979). Padberg concerned a broker associated with a real estate agency who sought coverage under the agency's malpractice policy for claims against him rising out of activities occurring prior to his association with the agency. The insurer refused to defend the broker. Reviewing the policy, the California court found that the policy language did cover the broker, "but only while acting within the scope of his duties as such." Actions occurring prior to the broker's association with the policy holder were not within the scope of his duties, and thus were not covered. Similarly, in Swift, an insurance agent failed to include a church parsonage in a fire policy. After the agent became employed by another concern, the church was destroyed in fire. The church filed suit against the agent who requested that his current employer's carrier defend him under the employer's malpractice policy. The carrier refused. After the church recovered against the agent, the agent brought suit against the carrier. The policy contained language requiring an employee to be acting within the scope of his duties when the omission occurred in order to be covered under the policy. The court found that the agent was not acting within the scope of his duties when he failed to insure the parsonage and therefore no coverage attached.
In this case, the policy contains no such restrictive language. Moreover, the policy is not ambiguous. Therefore this court cannot interpret the policy to assign a different meaning to language that is clear.[3]Rigel v. National Casualty Company, 76 So.2d 285 (Fla. 1954). The policy simply defines "insured" to mean:
(A) The brokerage firm named in Item 1 of the Declarations.
(B) Any person who is a proprietor, partner, officer, director, or stockholder of such brokerage firm, including spouses of such persons who are actively engaged in the operations of such brokerage firm.
(C) Any person who is an employee, sales person, sales associate or unlicensed trainee or independent contractor broker of such brokerage firm.
(D) The estates, heirs, legal employee, sales person, sales associate or unlicensed trainee or independent contractor broker of such brokerage firm.
The policy then expressly and without limitation provides coverage for wrongful acts reported to the company during the policy *1083 period. If Federal wished to further restrict its coverage it could have so stated in the policy. We can only assume that the insurance company, aware of its actuarial risk, charged what it believed to be an adequate premium.
The summary judgment entered against Federal is reversed and the cause remanded to the trial court to enter judgment according Moncello coverage.
REVERSED and REMANDED with instructions.
DAUKSCH, J., concurs.
HARRIS, J., dissents with opinion.
HARRIS, Judge, dissenting.
I respectfully dissent. While I agree with the majority that the insurance policy here involved is not ambiguous, still its coverage must be determined from the entire policy and not merely portions thereof. Unambiguous insurance contracts are enforced in accordance with the reasonable expectations of the insured. Sparks v. St. Paul Ins. Co., 100 N.J. 325, 495 A.2d 406 (1985).
It is true that the policies involved in Padberg v. The Travelers, 197 Cal. App.3d 1161, 243 Cal. Rptr. 266 (1987) and Swift v. American Home Assurance Co., 22 Wash. App. 777, 591 P.2d 1216 (1979) both contained "within the scope of their duties" language. But is the omission of that language, in and of itself, determinative of the coverage issue in our case? I think not. In construing a contract the court must consider the objectives to be accomplished, and to this end should place itself in the position of the parties when the contract was entered into. Bay Management, Inc. v. Beau Monde, Inc., 366 So.2d 788 (Fla. 2d DCA 1978).
The policy in its entirety indicates a general plan whereby the corporation, the named insured, obtains basic coverage for its own protection and secures equal protection for its officers, employees, agents, and others whose actions might result in the imposition upon it of vicarious liability. It is obvious that the purpose of the policy is to protect the named insured.
Certainly Active One Realty, Inc. would not be liable for errors and omissions of appellant committed before he became associated with it. But the result of the majority decision is that by associating with someone with unknown outstanding claims, the named insured can immediately become the uninsured. Under the policy at issue the maximum coverage during any one year is $1,000,000. If a claim is made against a new associate for pre-association liabilities of $1,000,000 or more, the named insured, the one who paid the premium to protect itself, becomes uninsured the balance of the year. Neither the named insured nor the insurance company contemplated such a possibility. The new associate should not reasonably expect the new employer to insure him against his past errors and omissions. There appear to be no public policy reasons to impose such an obligation on either the named insured or the insurance company.
This case is similar to Shaffer v. Wells Fargo Guard Services, 528 So.2d 389 (Fla. 3rd DCA), rev. denied, 534 So.2d 401 (1988). In Shaffer plaintiff was admittedly a third party beneficiary in a contract between Citizens Federal Savings and Loan and Wells Fargo Guard Services in which Wells Fargo was to "help provide the [bank] with a system of protection for its assets and employees against certain hazards". Plaintiff was attacked by the husband of one of his co-employees who thought there was more going on at the bank than counting money. The majority held:
Although it can be fairly said that Shaffer was an intended third-party beneficiary between the bank and Wells Fargo, it cannot be fairly said that the contract contemplated protecting bank employees from hazards totally unconnected to the activities or business of the bank ... Extracrurricular dalliances  whether real or imagined  with fellow employees, while surely forms of carrying on, are certainly none of the bank's business.
Shaffer, p. 389.
By analogy, I would hold that the term "wrongful act" contained in the insurance *1084 policy here involved means wrongful acts committed within the scope of their duties with Active One Realty, Inc.
I would AFFIRM the trial court.
NOTES
[1] In a "claims made" policy, it is the making of the claim which is the peril being insured, regardless of when the occurrence giving rise to the claim took place. Unless the retrospective coverage of the claims made policy is restricted in some manner by the terms of the policy, the retroactive coverage is unlimited. For a thorough discussion of the distinction between a "claims made" policy and an "occurrence" policy, see Zuckerman v. National Union Fire Insurance Co., 100 N.J. 304, 495 A.2d 395 (1985).
[2] The policy provides, in pertinent part:

2.3 In the event of the Insured(s) being so required to contest legal proceedings, the Company, subject to the provisions of Items 4 and 5 of the Declarations, will pay the costs, charges, and expenses in connection therewith.
[3] If, however, the language of the policy were deemed ambiguous, the policy must be construed to provide coverage. Rigel v. National Casualty Company, 76 So.2d 285 (Fla. 1954). Travelers Insurance Company v. Bartoszewicz, 404 So.2d 1053 (Fla. 1981); National Merchandise v. United Service, 400 So.2d 526 (Fla. 1981). Either way the policy provides Moncello coverage.