634 So.2d 268 (1994)
Norman L. TILLMAN and Judith A. Tillman, his wife, Appellants/Cross-Appellees,
v.
Michael J. HOWELL and Linda Howell, his wife, Appellees/Cross-Appellants.
Nos. 92-0259, 92-2005.
District Court of Appeal of Florida, Fourth District.
March 30, 1994.
George P. Ord, Alley, Mass, Rogers & Lindsay, P.A., Palm Beach, for appellants, cross-appellees.
Richard A. Kupfer, Richard A. Kupfer, P.A., West Palm Beach, and Popkin & Shirpin, P.A., Boca Raton, for appellees, cross-appellants.
HERSEY, Judge.
Norman and Judith Tillman appeal from a final judgment of foreclosure of their mortgage held by Michael and Linda Howell. The Howells appeal from a final judgment for damages awarded to the Tillmans.
The Tillmans negotiated with the Howells to purchase a home being constructed by Michael Howell's construction company, Audobon *269 Homes. The transaction was consummated, and, because closing took place before completion of construction, the Tillmans gave the Howells a promissory note in the amount of $110,000.00 secured by a mortgage on the premises. The purpose of this note was to ensure satisfactory completion of construction. The balance ($443,000.00) of the total purchase price of $553,000.00 was paid at closing.
The Tillmans moved in and began to encounter problems which they attributed to construction defects. They filed suit. During the pendency of that litigation, the house flooded, which was allegedly caused by leakage from an improperly connected water pipe. During the course of the repairs necessitated by that flooding, a second flood occurred when a carpenter installing the new baseboard accidentally drove a nail into a pipe.
When the note and mortgage came due, the Tillmans, because of the problems they had encountered, refused to pay the balance. Consequently, the Howells filed their foreclosure action.
The two cases were consolidated and tried together. Following the rehearing process, the following awards were made in an amended final judgment: In the foreclosure action, the Howells were awarded the principal sum of $110,000.00 together with interest in the amount of $42,229.84 for a total of $152,229.84; In the damages action, the Tillmans were awarded damages in the amount of $62,614.27 together with an amount of $22,000.00 for constructive eviction, resulting in a total award of $84,614.27.
The court then held that the Tillmans were entitled to have their award set off against the Howells' judgment, reducing their ultimate liability to $67,615.57 with interest from the date of the final judgment, August 15, 1991. Foreclosure was ordered. Orders were also entered on the respective parties' motions for attorneys' fees and costs.
During the trial process the court ruled that the Tillmans could not recover damages caused by the second flooding from the Howells because those damages resulted from an unforeseeable, independent intervening cause. As noted earlier, in February of 1989 the Tillmans experienced flooding problems due to an improperly soldered pipe connection. The flooding caused significant damage to some of the hardwood floors and cabinets. Near the end of the repair process, the trim carpenter, while nailing a baseboard, drove a nail through another water pipe which caused further flooding and further damage.
The Tillmans argue that the carpenter's negligence was foreseeable. They contend that the improperly soldered pipe necessitated repairs, and, as part of that particular repair process, they incurred additional damages. The Tillmans cite cases which hold that a negligent party is not absolved of liability when his/her conduct sets a chain of events causing injury in motion. See, e.g., Gibson v. Avis Rent-a-Car System, Inc., 386 So.2d 520 (Fla. 1980). They also cite several cases which hold a tortfeasor liable for injuries the plaintiff incurs as a result of intervening medical malpractice. See, e.g., Stuart v. Hertz Co., 351 So.2d 703 (Fla. 1977).
The Howells maintain that the question of what is an independent, intervening cause is a question for the fact finder, and that the cases cited by the Tillmans merely support sending the question to the fact finder instead of deciding the proximate cause issue as a matter of law. Secondarily, the Howells complain that the Tillmans did not give them a chance to fix the floor, and rather hired their own coterie of workers to repair the damage. They also argue that after the first flood the Tillmans replaced the floor with a much more expensive one, and therefore the Howells believe they should not now have to pay that much more for the damages.
We agree with the result reached by the trial court and advocated on appeal by the Howells, but not for the stated reasons. See Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150 (Fla. 1979). The Tillmans' action is based upon breach of contract. In a case involving unfinished construction, the supreme court, in Grossman Holdings Ltd. v. Hourihan, 414 So.2d 1037 (Fla. 1982), adopted subsection 346(1)(a) of the Restatement (First) of Contracts (1932) as the law of Florida in measuring damages in an action *270 for breach of contract. That subsection provides:
(1) For a breach by one who has contracted to construct a specified product, the other party can get judgment for compensatory damages for all unavoidable harm that the builder had reason to foresee when the contract was made, less such part of the contract price as has not been paid and is not still payable, determined as follows:
(a) For defective or unfinished construction he can get judgment for either
(i) the reasonable cost of construction and completion in accordance with the contract, if this is possible and does not involve unreasonable economic waste; or
(ii) the difference between the value that the product contracted for would have had and the value of the performance that has been received by the plaintiff, if construction and completion in accordance with the contract would involve unreasonable economic waste.
While Grossman involved a suit by an owner against a contractor for unfinished construction, the rationale has been applied to causes of action involving construction defects as well. See Tree Const. Corp. v. Caplinger, 446 So.2d 245 (Fla. 4th DCA 1984); see also Andalora v. Lindenberger, 576 So.2d 354 (Fla. 4th DCA 1991).
As early as 1854, as explained in Hadley v. Baxendale, 9 Ex. 341, 156 Eng.Rep. 145 (1854), the damages recoverable for breach of contract have been limited to:
those which are the natural and proximate result of the breach, or which, in the ordinary course of events, would naturally result from a breach, and can reasonably be said to have been foreseen or contemplated by the parties at the time when they made the contract as a probable or natural result of a breach... .
(Citation and footnotes omitted.) Further it is said that "damages which do not arise naturally from a breach of the contract, or which were not within the reasonable contemplation of the parties at the time the contract was made, are not recoverable." Williams v. Atlantic Coast Line R. Co. 56 Fla. 735, 48 So. 209, 211 (Fla. 1908), citing Brock v. Gale, 14 Fla. 523 (Fla. 1874).
In essence it may be said that under present Florida law one liable for the tort of negligence must answer for all of the natural, direct and proximate consequences of his tortious conduct, whereas one who breaches a contract is answerable only for damages that were or reasonably should have been in the contemplation of the contracting parties. Application of that principle to this issue on appeal requires an affirmance.
In sorting out the conflicting damage claims, the trial court determined that prejudgment interest should be added to the amount due on the promissory note before offsetting that figure against the Tillmans' damages for construction defects. This was error. The purpose of the note and mortgage was to ensure satisfactory completion of construction. To the extent that performance was less than satisfactory and the structure defective, there was a failure of consideration. The amount due on the promissory note should have been reduced by the construction damages before computation of an amount for prejudgment interest. See Konover v. Hochman, 439 So.2d 994 (Fla. 4th DCA 1983). See also, semble, Manning v. Clark, 89 So.2d 339 (Fla. 1956). As to this point on appeal we reverse.
The trial court refused to permit the Tillmans to recover prejudgment interest because it was not pled. The cases cited in support of that holding all predate Argonaut Ins. Co. v. May Plumbing Co., 474 So.2d 212 (Fla. 1985), the landmark case on this subject. Prejudgment interest is an element of damages, not a cost or a fee, and its entitlement follows any award for liquidated damages. We have discussed but have never before clearly ruled on this issue. See Napp v. Carman, 576 So.2d 361 (Fla. 4th DCA 1991); Otis Elevator Co. v. Scott, 551 So.2d 489 (Fla. 4th DCA 1989), disapproved on other grounds, 572 So.2d 902 (Fla. 1990). We do so now and hold that it need not be specially pled. See, e.g., Getelman v. Levey, 481 So.2d 1236 (Fla. 3d DCA 1985), rev. denied, 494 So.2d 1150 (Fla. 1986). We reverse as to this point.
*271 Finally, we address the award of damages to the Tillmans of $22,000.00 for "constructive eviction." Without belaboring the point, constructive eviction comes from the law of landlord and tenant and is an element of the damages recoverable by the tenant where, due to the fault of the landlord, he is actually or constructively turned out of possession. We need not consider the esoteric question of whether this concept should be applicable in the context of builder-homeowner. In this case the Tillmans recovered the cost of moving, storage and living quarters made necessary by construction defects and the repair process. They were not entitled in addition to the fair rental value of their home. That clearly would constitute an impermissible double recovery. We reverse as to this element of damage awarded the Tillmans.
In all other respects we affirm the issues presented for our review.
To recap, for the guidance of the parties, counsel, and the trial court:
The Tillmans' award is to be reduced by $22,000.00 and they are to be awarded prejudgment interest on their damage claim.
The Howells' award is to be computed by first subtracting the amount of the award of damages to the Tillmans from the principal amount the Tillmans owe on the promissory note. Then, prejudgment interest is to be computed on the remaining balance only.
We affirm in part; reverse in part, and remand for recomputation of the amounts due as required by our opinion.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
PARIENTE, J., concurs.
FARMER, J., dissents and concurs with opinion.
FARMER, Judge, concurring and dissenting.
If the original tortfeasor can be held liable as a matter of law for additional injuries later caused to the victim of the original accident by a negligent treating physician, Stuart v. Hertz Co., 351 So.2d 703 (Fla. 1977), why then shouldn't the original tortfeasor be equally responsible as a matter of law for additional property damages later caused to plaintiff's property by a negligent repairing artisan? Because the possible negligence of a repairman hired to fix the damage caused by the original tortfeasor's conduct occurs just as frequently in the spectrum of human experience and is thus just as foreseeable as the doctor's, I think he should.
Here the builder's negligence created a latent construction defect which led to a flood of the premises causing substantial damage. While repairing that damage, a carpenter drove a nail through a pipe and caused additional flooding and damage. The trial court found the repairing carpenter's negligence to be an "unforeseeable intervening cause which broke the chain of negligence." I distinguish that legal conclusion from a theoretically possible factual finding that the court did not make: that the particular damage caused by the carpenter was itself uniquely unexpected as unrelated to his misplaced nail. She did not find, (e.g., as a factual matter) that his damage was too remote from his assigned task to be chargeable to the defendant. Thus, I challenge a categorical legal ruling, not a particularized factual one. There is no logical reason to charge negligent actors with the later negligence of treating doctors but not of treating carpenters  or, for that matter, of plumbers, mechanics, electricians, or any other professional, artisan or laborer employed to effect a cure of the original actor's delict.
Surely, no one would suggest that doctors as a class are so much more frequently negligent than, say, carpenters that we should charge the defendant with the subsequent negligence only of the doctors but not of the carpenters. It is unassailably a common occurrence for repairmen themselves to be negligent even while curing the effects of another person's prior negligence. Nor should the fact that plaintiff selected and hired the carpenter make any difference. Patients select their doctors, their tortfeasors do not.
For me, the repairing carpenter's negligence is "the type of harm that has so frequently resulted from the same type of negligence *272 that `"in the field of human experience" the same type of result may be expected again.'" Gibson v. Avis Rent-Car System Inc., 386 So.2d 520, 522-23 (Fla. 1980). As such, the harm resulting from the carpenter's later negligence is, as a matter of law, within the scope of harm attributable to defendant's initial negligence; if it is within the scope of harm it is legally deemed foreseeable. Gibson, 386 So.2d at 522.
I think we err by applying the special breach of contract rule employed in Grossman Holdings Ltd. v. Hourihan, 414 So.2d 1037 (Fla. 1982), adopting section 346(1)(a) of Restatement (First) of Contracts (1932), as Judge Hersey has done here. I reach this conclusion on two procedural grounds and one substantive. In the first place, it was defendant who argued the independent, intervening cause defense instead of the Hourihan defense. Second, the trial court expressly accepted defendant's contention but said nothing about these damages being outside the contemplation of the contracting parties. On these procedural grounds, I think defendant waived the Hourihan analysis in the trial court.
But even if it had been preserved, I think it inapplicable. Hourihan involved a builder constructing a new house facing to the northwest, rather than the southeast as planned and agreed. Before construction began, the buyers brought this mistake to the attention of the builder "and remonstrated against construction of a mirror image of the house they had contracted for." 414 So.2d at 1038. The builder refused to change the plans and began construction. The buyers sued.
The trial court found that the builder had breached the contract but refused to award money damages for two reasons. First, specific performance would have been wasteful and out of proportion to the result thus obtained. Second the value of the house had increased substantially since contracting. The district court concluded that the economic waste doctrine did not apply to residential construction, and that the builder's breach was willful and intentional, thus concluding that the proper measure of damages was the amount necessary to make the house conform to the contract.
There is no economic waste involved in the present equation. No one contended below that the admitted cost of restoring plaintiffs to the position they would have enjoyed without the flood would itself result in economic waste out of all proportion to the good being restored. The Comment to Restatement section 346(1)(a) states that its provisions were intended to reach those cases in which "the value of the finished product is much less than the cost of producing it after the breach has occurred." Hourihan, 414 So.2d at 1039. The Comment goes on to explain: "Sometimes defects in a complete structure cannot be physically remedied without tearing down and rebuilding, at a cost that would be imprudent and unreasonable." Id. There is not a shred of evidence in this record to indicate that this is such a case. Hence the rule adopted in Hourihan is simply inapplicable to this case. We should thus reverse the trial court's intervening cause decision.
In all other respects, I agree with the court's opinion.