688 So.2d 937 (1996)
William SCOTT, P.E., etc., Appellant,
v.
ROLLING HILLS PLACE INC., etc., Appellee.
No. 96-1159.
District Court of Appeal of Florida, Fifth District.
December 13, 1996.
Order Denying Rehearing, but Granting Clarification February 21, 1997.
*938 Ronald W. Brown and Geoffrey B. Dobson of Dobson & Brown, P.A., St. Augustine, for Appellant.
Allen C.D. Scott, II and Holly E. Scott of Scott & Scott, P.A., St. Augustine, for Appellee.
W. SHARP, Judge.
Scott appeals from a final judgment entered against him for breach of contract, which included compensatory as well as punitive damages based on his provision of engineering services for Rolling Hills Place, Inc. (Rolling Hills). We reverse.
Rolling Hills hired Scott, a professional engineer, to work on a 57 acre, single family planned unit development. At the time Rolling Hills engaged Scott's services, he held a position as a full time utility manager for the City of St. Augustine, with a part-time engineering practice. Rolling Hills was aware of this situation. Scott prepared two proposals for his services. The first proposal was rejected. The second proposal was orally accepted, and Scott memorialized it in a letter agreement which Rolling Hills executed, but did not return to Scott. It was silent as to the method of payment. It included seven tasks which Scott was to complete, as well as specific payment amounts and a target date for each specified task. All application, connection and filing fees were assigned as the responsibility of Rolling Hills.
Scott commenced work on the project based upon the oral agreement between the parties. He submitted invoices on June 30, 1993, September 27, 1993 and January 12, 1994, which Rolling Hills paid in full. However, when Scott submitted the fourth invoice on April 15, 1994, Rolling Hills paid only one-half. Two more invoices, on July 28, 1994 and September 8, 1994, went unpaid. At that time, Scott claimed Rolling Hills owed him in excess of $15,000. The plans were completed, and all that had to be done was for Scott to sign and seal the plans. He failed to do this because Rolling Hills refused to pay him. He also filed a mechanics lien[1] against the property to protect his interests.
Rolling Hills filed this action against Scott in November of 1994, alleging Scott had breached the contract, and that the lien was a fraudulent one. It requested damages for breach of contract, and punitive damages as well as attorneys' fees. Subsequently, in January of 1995, Rolling Hills hired Christopher Hurst, a civil engineer, to complete the project. Hurst freely admitted copying Scott's plans on which he affixed his own "surveyorengineer's block.". On January 27, 1995, Hurst submitted the plans to St. John's County. Later minor adjustments were made to the plans. These plans were approved.
After a nonjury trial, the judge found that Scott breached the contract due to his failure to sign and seal the plans. He also found the contract to be nonspecific as to when payments were due, and that Rolling Hills offered to escrow the remainder due under the *939 agreement if Scott would finish the job.[2] The lower court acknowledged that Scott produced much of the work for the project, but found Rolling Hills received no benefit from these endeavors. This finding was in direct contrast to Hurst's unrebutted testimony that he copied Scott's plans and that these plans were approved.
Based upon its findings that Scott breached the contract, the court found that Rolling Hills suffered damages of $10,630 for engineering services to complete the plans and obtain approvals, $6,096 for survey work, compensatory damages of $5 and punitive damages of $5,000. Prejudgment interest from October 14, 1994 in the sum of $2,901.37 was also awarded, for a total sum of $24,632.90.
The key issue in this case is which party breached the contract first. The unrebutted facts compel us to conclude that Rolling Hills was the party who first breached the contract by its failure to pay Scott monies due him under it. Although the contract was silent as to the method of payment, the actions of the parties in making interim payments on the submission of invoices became a term of the contract. Lalow v. Codomo, 101 So.2d 390, 393 (Fla.1958); Bay Management, Inc. v. Beau Monde, Inc., 366 So.2d 788 (Fla. 2d DCA 1978). Parties' interpretations of their own contract will be followed unless contrary to law. Welsh v. Carroll, 378 So.2d 1255, 1257 (Fla. 3d DCA 1979), cert. denied, 386 So.2d 643 (Fla.1980). See also, M.G.M. Inc. v. Scheider, 40 N.Y.2d 1069, 392 N.Y.S.2d 252, 253, 360 N.E.2d 930 (1976)(courts imply term from external sources, including course of dealing, where contract silent).
Scott's failure to sign and seal the plans arose as a result of Rolling Hills' refusal to pay him for his services, and after Rolling Hills verbalized to third parties its intention not to make full payment under the contract. Moreover, it occurred some five months after Rolling Hills breached the contract by not paying the April invoice in full, and it was Scott's attempt to secure payment for which he was entitled under the contract.
We are also unpersuaded by Rolling Hills' argument that Scott filed a fraudulent lien. We find no evidence in the record which would support this finding. Rather, Scott's filing of the lien was to ensure that he received payment for his work, a purpose for which the mechanic's lien law was framed. Prosperi v. Code, Inc., 626 So.2d 1360, 1362 (Fla.1993). As the court noted in Prosperi, the purpose of the mechanic's lien law is "to afford the laborer or materialman adequate assurance of being fully compensated for his labor or services." Id. at 1362. Section 713.31(2)(a) requires a willful exaggeration of the lien before a lien may be deemed fraudulent.[3] Scott's claim of lien only indicated the amount he believed remained unpaid for the work performed, and we are unable to find this estimate to be a willful exaggeration of what was due him, in light of the facts in this case. A dispute as to the amount of money owed, or a dispute as to the method of payment, does not convert a good faith dispute into a fraudulent lien. Vinci Development Co. v. Connell, 509 So.2d 1128, 1132 (Fla. 2d DCA), rev. denied, 518 So.2d 1274 (Fla.1987). Therefore, the punitive damage award must be stricken,[4] and Scott is entitled to have his lien enforced.
*940 Upon remand to the trial court, a judgment in favor of Scott shall be entered in Rolling Hills' breach of the contract suit, and a hearing should be held on the question of damages. Scott is entitled to recover for the loss of his anticipated profits, which is the difference between the contract price and what it would have cost to perform the contract. Brevard County v. Interstate Engineering Co., 224 So.2d 786 (Fla. 4th DCA 1969). See also Physicians Reference Laboratory, Inc. v. Daniel Seckinger, M.D. & Associates, 501 So.2d 107 (Fla. 3d DCA 1987) (measure of damages for breach of contract to furnish services is the profit nonbreaching party would have earned during the remainder of the term if the contract had not been breached). He is further entitled to attorneys fees, as requested in his counterclaim. § 713.29, Fla. Stat. (1995).
REVERSED AND REMANDED.
GOSHORN and THOMPSON, JJ., concur.

ON MOTION FOR REHEARING AND CLARIFICATION
We deny appellant's motion to rehear, but grant appellee's motion for clarification.
Appellant's motion to rehear attempts to reargue the issues already carefully considered and decided by this court. Motions to rehear which reargue the merits of a case are inappropriate. Jacobs v. Wainwright, 450 So.2d 200 (Fla. 1984), cert. denied, 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 433 (1984); Jackson v. U.S. Aviation Underwriters, Inc., 466 So.2d 1119 (Fla.2d DCA 1985).
Although we believe the opinion is clear in the measure of damages to be awarded based upon breach of contract, we hereby clarify the opinion. The rule for damages for breach of contract was first announced in an old English case, Hadley v. Baxendale, 156 Eng.Rep. 145, 151 (Ex. 1854). Damages which flow naturally from the breach, and were foreseeable by the breaching party at the time the contract was entered, are recoverable. Id.
This is still the law today in this country. See, e.g., Globe Ref. Co. v. Landa Cotton Oil Co., 190 U.S. 540, 23 S.Ct. 754, 47 L.Ed. 1171 (1903); Poinsettia Dairy Products v. Wessel Co., 123 Fla. 120, 166 So. 306, 310 (1936); Tillman v. Howell, 634 So.2d 268, 270 (Fla. 4th DCA 1994); Florida East Coast Ry. Co. v. Beaver Street Fisheries, Inc., 537 So.2d 1065, 1068 (Fla. 1st DCA 1989). This means Scott is entitled to recover for the loss of his anticipated profits, and any other damages which flow from the breach. Bird Lakes Development Corp. v. Meruelo, 626 So.2d 234, 238 (Fla. 3d DCA 1993). Rolling Hills' affirmative defenses are not to be considered on remand, since it was the breaching party and caused its own damages.
Motion for Rehearing DENIED; Motion for Clarification GRANTED.
GOSHORN and THOMPSON, JJ., concur.
NOTES
[1] § 713.13, Fla. Stat. (1993).
[2] However, the amount Rolling Hills offered to escrow was less than the amount Scott claimed was due and owing, and less than the amount due Scott under the contract.
[3] Specifically, it provides:

Any lien asserted under this part in which the lienor has willfully exaggerated the amount for which such lien is claimed or in which the lienor has willfully included a claim for work not performed upon or materials not furnished for the property upon which he seeks to impress such lien or in which the lienor had compiled his complaint with such willful and gross negligence as to amount to a willful exaggeration shall be deemed a fraudulent lien.
[4] Rolling Hills concedes that its claim to punitive damages rested on the fraudulent lien cause of action. We also note, however, that an alternative theory argued by Rolling HillsScott's removal of the plans from the countyis not relevant here as they were immediately returned in the same condition and there is no evidence that Rolling Hills suffered no damage by their removal.