In re Mary E. BACHNER, Debtor.

Mary E. BACHNER, Plaintiff,

v.

PEOPLE OF the STATE OF ILLINOIS ex rel. ILLINOIS STUDENT ASSISTANCE COMMISSION, Defendant.

Bankruptcy No. 93 B 5096.
Adv. No. 93 A 367.

United States Bankruptcy Court,
N.D. Illinois, E.D.

Feb. 17, 1994.

Douglas E. Zeit, Rosing, Applehans, Smith, Ericksen & Zeit, Ltd., Waukegan, IL, for debtor/plaintiff.

Richard K. Nowell, Sp. Asst. Atty. Gen., Revenue Litigation Div., Chicago, IL, for defendant.

## MEMORANDUM OPINION

JOHN D. SCHWARTZ, Chief Judge.

This matter is before the court on a motion for summary judgment filed by the Defendant, Illinois Student Assistance Commission ("ISAC"). The complaint seeks a determination that the Plaintiff's/Debtor's student loans are dischargeable. The Debtor argues that the motion should be denied as there is a genuine issue of material fact as to when the student loans "first became due." Both parties agree that in this case, the only legal issue for dischargeability purposes is whether the student loans first became due more than seven years before the Debtor's filing for bankruptcy. A student loan, being an educational loan, is non-dischargeable if it first became due more than seven years before the filing of the bankruptcy petition. 11 U.S.C. § 523(a)(8)(A).[1]

### Uncontested Facts

The parties agree that the Debtor incurred a legal obligation to repay two student loans under two valid student loan promissory notes which accrue interest at the rate of 9%. (The two notes are collectively referred to as the "Contracts.") Both Contracts provide for a mandatory grace period whereby the Debtor could not begin repayment until six months after the Debtor graduated or ceased to be enrolled in an eligible educational institution. The Debtor agreed to this mandatory six month grace period when she executed the Contracts. Under the Contracts, the Debtor was also required to comply with ISAC's rules and regulations. There is an ISAC rule that on 9% loans, there is a mandatory six month grace period. (This provision is set forth in each of the Contracts.) The Debtor can waive the grace period only by submitting a written request of waiver and executing a payout note. The Debtor first indicated a May graduation date, but did not graduate from college until December 20, 1985. She was enrolled at least half time until her graduation. The Debtor never requested a waiver of the mandatory grace period. She made two payments on the loans, both after June 20, 1986. On March 9, 1993, the Debtor filed for bankruptcy relief under Chapter 7 of the Bankruptcy Code.

### ISAC's Argument

In seeking summary judgment in its favor, ISAC argues that under the terms of the Contracts and applicable regulations, there was a mandatory six month grace period after the Debtor graduated or failed to be enrolled in an eligible school at least half-time. It is undisputed that under the Contract and the regulations, the Debtor was enrolled at least half-time until she graduated on December 20, 1985. Thus, the loans first became due on June 20, 1986. June 20, 1986, falls within seven years of the Debtor's filing for bankruptcy, March 3, 1993, and the loans must be declared non-dischargeable.

### Debtor's Response

The Debtor argues that there is a genuine issue of material fact as to when the loans first became due. The Debtor asserts that she obtained the loans from Lake View Trust and Savings Bank ("Bank") and that the Bank issued her a payment book showing that the first payment was due on December 30, 1985. (Over six months following her originally reported graduation date.) The Debtor further asserts that in April of 1986, the Bank sold the loans to ISAC, but that the Debtor was not notified that the loans were sold. The Debtor also states that the two payments made on the loans were predicated

---

1. All section references are to 11 U.S.C., unless otherwise stated. Any reference to the "Bank-ruptcy Code" refers to the sections complied in 11 U.S.C.

upon her first payment being due on December 30, 1985. Therefore, the Debtor argues that the Bank's sending of the payment book, which showed a December 30, 1985, payment date, acted to create a material question of fact as to when the loans first became due for the purposes of § 523(a)(8)(A).

### Discussion

Section 523(a)(8)(A) provides that a debt arising from a student loan is not dischargeable unless the loan "first became due more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition." The question presented to this court, as a result of the ISAC's motion for summary judgment and the Debtor's response, is whether this court can decide, as a matter of law, that the loans first became due six months after the Debtor actually graduated.

ISAC argues that the loans did not become due until after a mandatory six month grace period elapsed and that according to the Contracts, this was six months after the Debtor's actual graduation date. This would put the student loan obligations within the seven year period and make them non-dischargeable. The Debtor argues that the sending of the payment book by the Bank, which gave the December 30, 1985, first payment due date, creates a genuine issue of material fact as to when the loans "first become due."

■ Summary judgment can only be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is one that must be decided in order to resolve the substantive issue that is the subject of the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). To determine whether there is a dispute as to any material fact, the court must draw inferences from the underlying facts in a light most favorable to the non-moving party. *Rodeo v. Gillman*, 787 F.2d 1175, 1177 (7th Cir.1986). However, summary judgment is appropriate where the un-

disputed facts make the outcome clear. *Alexander v. Erie Ins. Exchange*, 982 F.2d 1153, 1160 (7th Cir.1993). If, through the summary judgment motion and supporting filings, the movant presents sufficient competent evidence to entitle it to judgment as a matter of law, the non-movant cannot rest on mere allegations in the pleadings or speculation; the non-movant must, through competent evidence, demonstrate specific facts that create a genuine issue for trial. *See In re Ralar Distributors, Inc.*, 4 F.3d 62, 67 (1st Cir.1993); *Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir.1989); *In re AM Int'l, Inc.*, 142 B.R. 252, 254 (Bankr.N.D.Ill.1992).

■ The legal standard for determining when the loans "first became due" under section 523(a)(8)(A) is a question of contract interpretation. *See In re Brown*, 4 B.R. 745, 746 (Bankr.E.D.Va.1980) ("When the loan first became due is simply a question of fact to be determined from the promissory notes signed pursuant to the student loan agreement."). The relevant inquiry is to determine when payment was due or in an installment arrangement, the date the first installment became due. *See In re Nunn*, 788 F.2d 617, 618–19 (9th Cir.1986); *United States v. McGrath*, 143 B.R. 820, 824 n. 6 (D.Md.1992), *aff'd*, 8 F.3d 821 (4th Cir.1993); *In re Eckles*, 52 B.R. 433, 434–35 (D.Wis.1985).

■ Under Illinois law, a contract is construed to give effect to the intention of the parties. *Airline Stewards & Stewardesses Ass'n Local 550 v. American Airlines, Inc.*, 763 F.2d 875, 877 (7th Cir.1985), *cert. denied*, 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986). If a written contract is unambiguous and contains no uncertain terms, its interpretation is a question of law; no evidence outside of the four corners of the paper it is written on may be used to construe it. *National Diamond Syndicate, Inc. v. United Parcel Serv., Inc.*, 897 F.2d 253, 256 (7th Cir.1990); *LaSalle Nat'l Bank v. Service Merchandise Co.*, 827 F.2d 74, 78 (7th Cir.1987). Thus, if a contract is unambiguous, summary judgment is appropriate. However, when the contract is ambiguous, extrinsic evidence is needed. *Quake Const., Inc. v. American Airlines, Inc.*, 181 Ill.

App.3d 908, 913, 130 Ill.Dec. 534, 537, 537 N.E.2d 863, 866 (1st Dist.1989); *aff'd*, 141 Ill.2d 281, 152 Ill.Dec. 308, 565 N.E.2d 990 (1990). If there is a dispute as to the extrinsic evidence, then summary judgment is inappropriate. In the case at bar, the Contracts are unambiguous. The non-movant agrees with this, as the non-movant has not raised an ambiguity issue. This court can decide as a matter of law that under the Contracts, the loans first became due on June 20, 1986 and that this period is within seven years of the Debtor's filing for bankruptcy.

On February 16, 1983, the Debtor signed a promissory note for a $2500 loan. This note sets forth the rights and responsibilities of the lender and borrower. Approximately one year later, on February 13, 1984, the Debtor signed a second promissory note for an additional $2500. Both notes were with the Bank and the promissory note forms were identical, the only difference being the dates entered on the two forms.

The repayment terms of the Contracts clearly provide for an automatic six month grace period prior to the beginning of repayment of the loans. The grace period begins on the date the borrower graduates or ceases to be enrolled at least half-time at an eligible educational institution. There is no question that Marquette University was an eligible educational institution. The Contracts do give a borrower the option to waive the grace period if the borrower submits a written request and signs a payout note. It is uncontested that the Debtor did not commit either of these actions.

 Once a valid contract is duly executed, its terms are binding. *See Borys v. Rudd*, 207 Ill.App.3d 610, 152 Ill.Dec. 623, 627–28, 566 N.E.2d 310, 314–15 (1st Dist. 1990), *appeal denied*, 139 Ill.2d 593, 159 Ill. Dec. 104, 575 N.E.2d 911 (1991) ("[O]nly a material breach of a contract provisions will justify non-performance by the other party."). Normally, a party's subsequent actions do not change the terms of an otherwise valid contract. The non-movants have not cited a single case in support of their contention that the Bank's sending of the payment book somehow creates a genuine issue of material fact as to when the first payment became due. No argument has been presented by the Debtor as to why the notification creates a genuine issue of fact. The court is unclear as to what theory the Debtor relies on—whether it be that the Bank somehow amended the Contracts, that the Bank waived its rights to a later payment, or estoppel, being that the Debtor reasonably relied upon the new due date. Whatever the theory, the Debtor has not meet her burden of coming forward with evidence or law so as to raise a genuine issue of material fact. Under any of these theories, the Bank's sending of the payment book would not create a new due date or create a question as to the due date.

Though the court has not been supplied with an affidavit regarding the Debtor's mental state as a result of receiving the payment book, if an affidavit had been supplied, the court's decision would not differ. The sending of the payment book is a non-material fact, as the Bank's action does not affect the court's construction and application of the Contracts. Any reliance by the Debtor on the payment coupon due date is unreasonable. This conclusion is supported by the fact that the Debtor received notice of the sale of the Contracts and the new due date before the Debtor made any payments. It was an action outside the four corners of the unambiguous Contracts. A reasonable inference, even in a light most favorable to the non-movant Debtor, would be that the Bank sent the book because it was acting consistently with its Contracts with the Debtor. The December 30, 1985, payment coupon date is over six months after the Debtor's reported anticipated graduation date. No evidence has been presented to the court to cause it not to infer that the Bank was acting consistently with the information the Debtor provided it prior to the Bank's sending of the payment book. However, in deciding this motion, the court need not make that finding. It only needs to examine the unambiguous Contracts, uncontested facts, and apply the law.

 When the contract was purchased by ISAC on April 7, 1986, it obtained the same rights as the Bank, no greater but

also no less. *See* 810 ILCS 5/3–203(b) (stating that the transfer of an instrument vests in the transferee any right of the transferor to enforce the instrument). The Debtor kept the same obligations. These respective rights and obligations were the terms set forth in the Contracts. The Bank's sending of the payment book with its December payment date was not an act that could legally amend the Contracts. The Debtor still had the same obligation—to begin payment six months after graduation. While there may be a factual dispute as to whether the Debtor was notified, at the time of the sale, that the loans were sold to ISAC, this factual dispute is nonmaterial. It is uncontested that ISAC discovered that the Debtor was still in school after the loans were sold and that ISAC notified the Debtor of the correct due date. Jean Ott's affidavit of December 29, 1993, confirms the fact that the Debtor was notified of the corrected due date after April 7, 1986.

It was not until ISAC bought the loans on April 7, 1986, that it discovered the Debtor's December 20, 1985, graduation date. ISAC then sent notice that the first payment would be due on June 20, 1986. This date is consistent with the terms of the Contracts. Even after notice of the extended date, the Debtor failed to make a payment by that date. The Debtor's allegation that the two payments it made sometime after the June 20, 1986, were made in reliance on the December due date, is not supported by any evidence. (Neither party has supplied the court with the exact date and amounts of the payment; however, this lack of information is irrelevant for deciding the summary judgment issue of when the debt first became due.) Even if there was evidence of reliance on the old date, this fact is irrelevant. In no way did the Bank's act of sending the payment booklet create a contractual question because the Contracts are unambiguous. In interpreting the Contracts and applying the uncontested facts, the court determines that the loans first became due on June 20, 1986, and that this date is within seven years of the Debtor's filing for bankruptcy.

### § 523(a)(8)(A) Burden of Proof

In making this finding, the court notes that even if the Bank had the burden of showing that the loans became due within seven years of the Debtor's filing for bankruptcy, the Bank would meet its burden. However, the court interprets the statutory scheme of § 523(a)(8)(A) as putting the burden on a debtor to prove that the loan "first became due more than seven years from the date of filing." Section 523(a)(8)(A), (B) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual from any debt—

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for any obligation to repay funds received as an educational benefit, scholarship or stipend, unless—

(A) such loan, benefit, scholarship, or stipend overpayment first became due more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose undue hardship on the debtor and the debtor's dependents;

The court reads this provision as presuming that a discharge on a debt would be granted, unless a party who has standing established that a debt arose from an educational loan as defined in § 523(a)(8). This debt would then be declared non-dischargeable unless the debtor establishes that the loan first became due more than seven years from the filing of bankruptcy under § 523(a)(8)(A) or that excepting the debt from discharge would impose undue hardship on the debtor and the debtor's dependents under § 523(a)(8)(B).

In the Seventh Circuit, the Debtor has the burden of showing "undue hardship" under § 523(a)(8)(B) by establishing that his circumstances warrant the discharge of his

educational loans. *In re Roberson,* 999 F.2d 1132, 1137 (7th Cir.1993). The court respectfully declines to follow *In re Keenan,* 53 B.R. 913, 915 (Bankr.D.Conn.1985), and *In re Wright,* 7 B.R. 197, 200 (Bankr.N.D.Ala. 1980), to the extent they hold that a creditor has the burden of proving that a debt exists under § 523(a), that it is for an education loan under § 523(a)(8), and that it first became due within seven years of the filing of the bankruptcy petition under § 523(a)(8)(A). The court would only impose the first two requirements on a creditor. Imposing the burden of proof on a creditor as to the timing question under § 523(a)(8)(A) makes its application inconsistent with § 523(a)(8)(B). Both of these subsections may be termed as exceptions to an exception to discharge.

The court's conclusion that the debtor has the burden of proving that the loan first became due more than seven years from the filing of the debtor's bankruptcy petition is supported by the Senate report on the original version of the § 523(a)(8)(A), (B). "This provision is intended to be self-executing and the lender or institution is not required to file a complaint to determine the nondischargeability of any student loan." S.Rep. No. 989, 95th Cong., 2d Sess. 079 (1978). In compliance with this statement, the Debtor filed a complaint seeking a determination that the student loan debts are dischargeable. ISAC, as the purchaser of the loan from the lender and as a unit of the governmental institution guaranteeing the loan, moved for summary judgment in its favor.

To meet its evidentiary burden under § 523(a)(8), a creditor would presumably supply the loan contract. These documents, as in the case at bar, would set forth the relevant payment dates. Thus, unless the contract was ambiguous, the court would only need the debtor's bankruptcy filing date and it could then determine whether the loan first became due within seven years of the debtor's filing for bankruptcy.

For the reasons stated herein, summary judgment in favor of ISAC is proper. Therefore, the Debtor's obligation arising from the two loans are declared to be non-dischargeable pursuant to § 523(a)(8) and judgment on the complaint is entered in favor of the Defendant, ISAC.