**In re Scott A. SCHIRMER, Debtor.**

**Scott A. SCHIRMER, Plaintiff,**

v.

**MINNESOTA HIGHER EDUCATION COORDINATING BOARD, Defendant.**

**Bankruptcy No. 3–94–4207.**
**Adv. No. 3–95–152.**

United States Bankruptcy Court, D. Minnesota, Third Division.

Jan. 24, 1996.

liability over $102,000.

Janette K. Brimmer, Assistant Attorney General, State of Minnesota, St. Paul, MN, for Defendant.

Eric L. Crandall, Stillwater, MN, for Plaintiff.

## ORDER RE: PARTIES' CROSS–MOTIONS FOR SUMMARY JUDGMENT

GREGORY F. KISHEL, Bankruptcy Judge.

This adversary proceeding came on before the Court on September 22, 1995, for hearing on the parties' cross-motions for summary judgment. The Plaintiff appeared by his attorney, Eric L. Crandall. The Defendant appeared by Janette K. Brimmer, Assistant Attorney General. Upon the stipulation of facts submitted by the parties and the memoranda and arguments of counsel, the Court makes the following order.

### NATURE OF PROCEEDING

The Plaintiff filed a voluntary petition under Chapter 7 of the bankruptcy Code on September 12, 1994. The Defendant is one of his scheduled creditors; it made him an education loan from its Student Education Loan Fund ("SELF") in 1986.

Via this adversary proceeding, the Plaintiff seeks a judgment that his debt to the Defendant was discharged during the course of his bankruptcy case. In its answer, the Defendant seeks a determination that the debt was excepted from discharge.

### MOTION AT BAR

Pursuant to Fed.R.Bankr.P. 7056,[1] both parties have moved for summary judgment

---

1. This rule makes Fed.R.Civ.P. 56 applicable to adversary proceedings in bankruptcy. In perti- nent part, Fed.R.Civ.P. 56(c) provides that, upon a motion for summary judgment,

on their respective requests for relief. They have stipulated to all of the material facts, so this matter is appropriate for summary adjudication. *W.S.A., Inc. v. Liberty Mut. Ins. Co.,* 7 F.3d 788, 790 (8th Cir.1993); *Coca–Cola Bottling Co. v. Teamsters Local Union No. 688,* 959 F.2d 1438, 1440 (8th Cir.1992); *In re Atkins,* 176 B.R. 998, 1002 (Bankr. D.Minn.1994); *In re Sunde,* 149 B.R. 552, 554 (Bankr.D.Minn.1992); *In re Ramy Seed Co.,* 57 B.R. 425, 430 (Bankr.D.Minn.1985).

## FINDINGS OF FACT

The Plaintiff enrolled at the School of Communication Arts in September, 1986. On November 14, 1986, he applied for a SELF loan from the Defendant, in the principal amount of $4,000.00. In connection with that application, he signed a promissory note on the standard form for the SELF program promulgated by the Defendant. Under the language of that note, the Plaintiff agreed, in pertinent part, as follows:

> 4. PAYMENT
>
> > a. Interest. I will pay interest on my loan every three months ("quarterly") while I am an "Eligible Student". My payments will begin three months after the date of the first loan check I receive from you. I will make my last quarterly interest payment at the end of the quarter in which I stop being an Eligible Student. I will then make monthly interest payments under the Thirteenth month after I stop being an Eligible Student ...
>
> > . . . . .
>
> > b. Principal and Interest. I will begin repaying the principal balance of my loan, plus interest, in the thirteenth month after I stop being an Eligible Student ...

The Defendant approved the Plaintiff's loan application on December 9, 1986, and disbursed the loan to him in two payments made during the winter of 1986–87.

Given the dates on which the Defendant disbursed the loan, the Plaintiff was to commence making payments of interest only pursuant to Term 4.a. of the promissory note no later than May, 1987.[2] The Plaintiff made his first payment on June 23, 1987, in the amount of $48.07.

The Plaintiff completed his course of study at the School of Communication Arts in May, 1987. Pursuant to Term 4.b. of the promissory note, he was to have commenced making payments of principal and interest no later than June, 1988.[3]

The Plaintiff filed his petition for relief under Chapter 7 on September 12, 1994. He received a discharge in due course, on December 13, 1994.

## DISCUSSION

■ As a general rule, the treatment of debts like the one at bar is governed by the prefatory part of 11 U.S.C. § 523(a)(8):

> A discharge under [11 U.S.C. §] 727 ... does not discharge an individual debtor from any debt—
>
> > . . . . .
>
> > for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend ...

This provision creates a broad, self-executing exception from discharge in bankruptcy for educational-loan obligations. S.REP. No. 989, 95th Cong., 2d Sess. 79 (1978). The statute goes on to create two exceptions to the exception. The Plaintiff relies on the first one,

---

[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits [submitted in support of the motion], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

**2.** This is the recitation in the parties' stipulation of fact. Since the face of the note reveals that the Plaintiff received his first loan disbursement on January 9, 1987, the first interest payment was technically due on April 9, 1987.

**3.** This is the recitation in the parties' stipulation of fact, without a specific date.

§ 523(a)(8)(A), which allows the discharge of education-loan obligations if

> ... such loan, benefit, scholarship, or stipend overpayment first became due more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the [borrower's bankruptcy] petition ...

This matter presents a single issue of law, which counsel for the parties have neatly and concisely identified: Where the repayment terms of an educational loan provide for the making of payments of interest only during the student's course of study, and defer the commencement of the reduction of the principal until after the student completes the course, when does the loan "first bec[o]me due" for the purposes of § 523(a)(8)(A)?

Rather remarkably, this seems to be a case of first impression, at least insofar as the published body of caselaw is concerned; there do not seem to be any reported decisions on this issue.

■ The narrow issue presented here is governed exclusively by the precise language of § 523(a)(8)(A).[4] The statute draws a distinction between the "debt" that is discharged, and the "loan", the first due date of which commences the statute's seven-year moratorium on dischargeability.

The former is a defined term under the Code.

> ... '[D]ebt' means liability on a claim ...,

4. In applying § 523(a)(8)(A), several courts have characterized the question of when an educational loan first became due as one of fact, to be resolved by reference to the terms of the underlying note. *E.g., In re Brinzer*, 45 B.R. 831, 833 (W.D.Va.1984); *In re Whitehead*, 31 B.R. 381, 383 (Bankr.S.D.Ohio 1983); *In re Crumley*, 21 B.R. 170, 171 (Bankr.E.D.Tenn.1982); *In re Brown*, 4 B.R. 745, 746 (Bankr.E.D.Va.1980). Without characterizing the issue as one of fact or law, another court observed that it is "determined by reference to the underlying loan documents including the promissory notes." *In re Chisari*, 183 B.R. 963, 967 (Bankr.M.D.Fla. 1995). Still others have termed the issue before them as one purely of law, but of contract interpretation rather than statutory construction. *In re Woodcock*, 45 F.3d 363, 365–367 (10th Cir. 1995); *In re Bachner*, 165 B.R. 875, 878 (Bankr. N.D.Ill.1994). None of these cases raise the issue presented here. Most of them apparently

11 U.S.C. § 101(12); and, in turn, in pertinent part,

> 'claim' means—
>
> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured ...

11 U.S.C. § 101(5). Clearly, the "right to payment" that constitutes a "debt" cognizable in bankruptcy is broader than just the principal amount of any pre-petition advance of credit; it can also include such ancillary contractual entitlements as interest, attorney fees, and costs of collection. *Cf. In re Hunter*, 771 F.2d 1126, 1131–1132 (8th Cir.1985).[5]

■ In fixing the commencement of the moratorium on dischargeability, Congress chose to use a different word, "loan." A court construing such an election in drafting must assume that it was intentional. The Bankruptcy Code does not contain a definition for the word "loan," whether at § 101 or elsewhere. Absent such a definition, or another indication that a word has a specialized meaning for the statute, the word is to be taken according to the meaning given it in common usage, as long as that does not defeat the purpose for which the statute was passed. *Bruhn's Freezer Meats of Chicago, Inc. v. United States Dept. of Agriculture*, 438 F.2d 1332, 1338 (8th Cir.1971).

Typically, "loan" is dictionary-defined as

involved educational loans on which the debtors' obligations to make current payments of interest were forgiven, tolled or otherwise obviated during their attendance at an *educational* institution. Others involved the consolidation of several educational loans, and whether such a reamortization delays the beginning of the moratorium on dischargeability. *Hiatt v. Ind. State Student Assist. Comm'n*, 36 F.3d 21, 23–24 (7th Cir.1994); *In re Hesselgrave*, 177 B.R. 681, 684 (Bankr. D.Ore.1995); *In re Martin*, 137 B.R. 770, 774–775 (Bankr.W.D.Mo.1992); *In re Saburah*, 136 B.R. 246, 252 (Bankr.C.D.Calif.1992).

5. Though the *Hunter* court did not refer to the statutory definitions of "debt" and "claim," it was applying the same prefatory language of 11 U.S.C. § 523(a) as is applicable here. That language, of course, creates exceptions to discharge for "any" of several specified types of "debt."

... something lent, usually money, on condition that it is returned, *with or without interest* ...

NEW WEBSTER'S DICTIONARY AND THESAURUS OF THE ENGLISH LANGUAGE, at 580 (1992) (emphasis added). The only principled way to give life to Congress's election of terminology, then is to equate the term "loan" to the principal amount of the credit originally extended, and nothing more.[6]

 Congress's choice of language, then, establishes that the seven-year moratorium on dischargeability commences when the first payment of principal on an educational loan becomes due under the terms of the underlying note. A debtor in bankruptcy seeking to discharge an educational loan under § 523(a)(8)(A), then, does not have the benefit of any time during which his obligation to make payment on principal was deferred, whether he had the contemporaneous burden of paying interest as it accrued, or not.

This conclusion furthers the legislative purpose of § 523(a)(8)(A). Congress created a moratorium on dischargeability of educational loans to maintain the integrity of the federally-supported student loan system, and to ensure that the program remained viable for future generations of students. S.REP. No. 230, 96th Cong., 1st Sess. 3 (1979), reprinted in 1979 U.S.C.C.A.N. 936, 938 (legislative history of amendment to broaden scope of general nondischargeability provision of § 523(a)(8)). The moratorium is designed to discourage borrowers on educational loans from filing for bankruptcy shortly after graduation or other termination of their educational course, without attempting to repay their educational loans and at the beginning of the career whose start was financed by those loans. S.REP. No. 882, 94th Cong., 2d Sess. 32 (1976), reprinted in 1976 U.S.C.C.A.N. 4713, 4744 (legislative history

to former 20 U.S.C. § 1087–3, statutory predecessor to § 523(a)(8)(A)). *See also In re Nunn*, 788 F.2d 617, 619 (9th Cir.1986):

The statute was designed to ensure that graduates would seek bankruptcy for legitimate reasons only, and not merely to avoid the obligation to repay student loans. The key to accomplishing the congressional objective was the adoption of a bar to discharge in bankruptcy for a fixed period of time that would end sufficiently long after the student's studies had terminated.

The moratorium on dischargeability, then, deprives educational-loan borrowers of an unqualified right to general discharge in bankruptcy, and preserves educational lenders' nonbankruptcy collection remedies until the end of the moratorium period. S.REP. No. 882, 94th Cong., 2d Sess. 32 (1976), reprinted in 1976 U.S.C.C.A.N. 4713, 4744.

Currently, undergraduate courses of studies at colleges and universities in the United States almost invariably extend over four to five years, and frequently longer. While many educational-loan programs supported by federal and state governments subsidize or defer the payment of interest during the term of the borrower's enrollment in school, others do not.[7] If an educational loan were considered to "first become due" upon the commencement of a contractual duty to pay accruing interest, a student borrower could conceivably exhaust the majority of the statutory moratorium on dischargeability while still a student. This result clearly would be contrary to Congress's intent.

The result in the matter at bar, then, is straightforward. Under the terms of the Plaintiff's loan from the Defendant, his obligation to commence reducing the principal amount of the loan did not commence until sometime in June, 1988. Section 523(a)(8)(A) barred him from obtaining the discharge of

---

6. If state law is relevant to the dispute at bar, it supports this conclusion. In accordance with generally-applicable Anglo–American principles, Minnesota law defines "interest" as compensation for the use of another's money. *Thompson v. Gasparro*, 257 N.W.2d 355, 356 (Minn.1977); *General Mills, Inc. v. State of Minnesota*, 303 Minn. 66, 226 N.W.2d 296, 299 (1975); *Lund v. Larsen*, 222 Minn. 438, 24 N.W.2d 827, 829 (1946). This definition undeniably contemplates

that a creditor's recovery of value in the form of interest is separate and distinct from the value of the original extension of credit.

7. Indeed, given the current fiscal strictures on all levels of government in the United States, future students will probably face reductions in such subsidies and deferments, rather than their preservation or expansion.

his educational-loan obligation in any bankruptcy case commenced within seven years of that date. Because he filed for relief under Chapter 7 within that period, then, his debt to the Defendant is still excepted from discharge.

### ORDER FOR JUDGMENT

Upon the foregoing Findings of Fact and Conclusions of Law, then,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the Plaintiff's debt to the Defendant was excepted from the discharge in bankruptcy granted to the Plaintiff on December 13, 1994, in BKY 3–94–4207.

LET JUDGMENT BE ENTERED ACCORDINGLY.