In re Carole D. PARR, Debtor.

Barbara G. STUART, United States
Trustee, Plaintiff,

v.

Carole D. PARR, Defendant.

Bankruptcy No. 97–34797.
Adversary No. 97–3230.

United States Bankruptcy Court,
D. Minnesota,
Third Division.

July 14, 1998.

William L. Bodensteiner, Austin, MN, for
Defendant.

Sarah J. Fagg, Office of U.S. Trustee,
Minneapolis, MN, for U.S. Trustee.

MEMORANDUM ORDER RE: CROSS–
MOTIONS FOR SUMMARY
JUDGMENT

GREGORY F. KISHEL, Bankruptcy
Judge.

This adversary proceeding came on before
the Court on June 2, 1998, upon the parties'
cross-motions for summary judgment. The
Plaintiff appeared by her attorney, Sarah J.
Fagg. The Defendant appeared by her attor-
ney, William L. Bodensteiner. Upon the
parties' stipulation of fact and the memoran-
da and arguments submitted by counsel, the
Court grants the Plaintiff's motion, denies
the Defendant's motion, and denies the De-
fendant a discharge under Chapter 7 in BKY
97–34797.

The Plaintiff, as United States Trustee, commenced this adversary proceeding for denial of discharge under 11 U.S.C. § 727(a)(9).[1] In pertinent part, this statute provides that, in a Chapter 7 case,

> [t]he court shall grant the debtor a discharge, unless-
>
> . . .
>
> (9) the debtor has been granted a discharge under [11 U.S.C. § ]1328 . . ., in a case commenced within six years before the date of the filing of the [current Chapter 7] petition, unless payments under the plan in such case totaled at least-
>
> (A) 100 percent of the allowed unsecured claims in such case; or
>
> (B)(I) 70 percent of such claims; and
>
> (ii) the plan was proposed by the debtor in good faith, and was the debtor's best effort . . .

At a scheduling conference, counsel agreed to present this matter for decision via cross-motions for summary judgment. The parties have stipulated to all of the material facts,[2] and to several threshold conclusions of law. This matter thus is ripe for summary judgment. *E.g., W.S.A., Inc., v. Liberty Mut. Ins. Co.,* 7 F.3d 788, 790 (8th Cir.1993); *Coca–Cola Bottling Co. v. Teamsters Local Union No. 688,* 959 F.2d 1438, 1440 (8th Cir.1992).

On May 6, 1992, the Defendant filed a voluntary petition for relief under Chapter 13 in this Court, commencing BKY 92–32677. She listed no secured creditors in her Schedule D, and no priority unsecured creditors in her Schedule E. She listed only two "creditors holding unsecured nonpriority claims" on Schedule F. Both were noted under the name of "Student Loan Servicing Center," with the same stated date of incurrence (1987). The claims aggregated to $10,203.57. The parties stipulate that these debts were excepted from discharge in the Chapter 13 case by operation of 11 U.S.C. § 1328(a)(2).[3]

Under her plan of debt adjustment in BKY 92–32677, the Defendant provided for payments of $50.00 per month to the Standing Trustee, to continue over a period of five years. The plan was confirmed. The Defendant completed payment under it. Through the Trustee's administration, the holders of allowed unsecured claims received a distribution of 20.25 percent of the allowed amount of

---

1. The Plaintiff has standing to do so; 11 U.S.C. § 307 gives her the right to "raise and . . . appear and be heard on any issue in any case or proceeding under" the Bankruptcy Code.

2. On a motion for summary judgment,

   [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits [submitted in support of the motion], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

   FED. R. CIV. P. 56(c), *as incorporated by* FED. R. BANKR. P. 7056. The governing substantive law determines which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

3. This statute provides that a Chapter 13 debtor who completes all payments under a confirmed plan is entitled to

   a discharge of all debts provided for by the plan . . ., except any debt-

   . . .

   (2) of the kind specified in [11 U.S.C. § 523(a)](8) . . .

   In turn, § 523(a)(8) provides, in pertinent part, that

   [a] discharge . . . does not discharge an individual debtor from any debt-

   . . .

   (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless-

   (A) such loan, benefit scholarship, or stipend overpayment first became due more than 7 years exclusive of any applicable suspension of the repayment period before the date of the filing of the [bankruptcy] petition; or

   (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents . . .

   The Defendant acknowledges that she did not establish either of the grounds for discharge under § 523(a)(8)(A)—(B) in BKY 92–32677; indeed, she never commenced a proceeding to determine whether she could. The main provision of § 523(a)(8) is self-executing, S. REP. No. 989, 95th Cong., 2d Sess. 79 (1978); thus, the exception from discharge was automatically effective for the earlier case.

their claims. By an order entered on June 5, 1997, this Court granted her a discharge under Chapter 13.

On July 17, 1997, the Debtor filed a voluntary petition for relief under Chapter 7, commencing BKY 97–34797. This filing was made within six years of the commencement of BKY 92–32677.

■ This adversary proceeding poses the question of whether the outcome of the Defendant's Chapter 13 case, when and as it transpired, bars her from receiving a discharge in her Chapter 7 case, when and as it was commenced. As a general matter, § 727(a)(9) sets up a six-year moratorium on receiving a successor discharge through Chapter 7, which commences when a debtor "has been granted a discharge" under Chapter 13. The exceptions of § 727(a)(9)(A)—(B) do not protect the Defendant from the moratorium, because she did not meet either of the minimum-performance criteria in them. As counsel jointly frame it, then, the outcome of this adversary proceeding will turn on whether the Debtor was "granted a discharge under" Chapter 13 in the earlier case, within the meaning of § 727(a)(9)'s broader language.

Both sides note the utter absence of guiding caselaw. They also insist that the answer is simple, even as they argue opposite outcomes. Of the two theories, however, the Plaintiff's prevails.

■ The statute is precise in identifying the signal event: the *grant* of discharge. A discharge under Chapter 13 is granted by the Court. 11 U.S.C. § 1328(a). Courts grant relief via the entry of an order, and so it is with the discharge in bankruptcy. Like any dispositive court order, one granting discharge works a conclusive reconfiguration of parties' legal rights and liabilities, subject only to timely appeal or to revocation under 11 U.S.C. § 1328(e).[4] As Judge Kressel has observed, the scope of a discharge is final upon its grant. *In re Anderson,* 72 B.R. 495, 496 (Bankr.D.Minn.1987). The full *effect* of

the discharge may not be self-evident; after its entry, further litigation may be required for "judicial determination of which debts were excepted from discharge." *Id.* Because of the number and variety of statutory exceptions to discharge, more numerous under some chapters of the Code than others, a debtor with the right debt structure may indeed receive a discharge that has no legal effect on his creditors' rights to full financial satisfaction.

In her earlier case, the Defendant was one such. The fact that she received less than full relief from her creditors in that case, however, is irrelevant to the application of § 727(a)(9) in her second case. She received what she petitioned for, an order of discharge. Under the plain language of § 727(a)(9), that narrowed her options for receiving full bankruptcy relief after that. That language triggers its moratorium on a simple act, the grant of a discharge in an earlier case. It does not qualify its trigger by reference to the scope or effectiveness of that discharge.

These conclusions dispose of the Defendant's first argument, which her counsel phrases almost in its entirety as "she did not receive a discharge [in her earlier case] ... because nothing was discharged."

■ The Defendant's second argument is somewhat more difficult to parse out. Its premise is that § 727(a)(9) is to prevent frequent serial bankruptcy filings, and at least in part is "aimed at debtors who are granted a chapter 13 discharge when they make only small payments in their plan." Admitting that this describes the Defendant, and that "the language of the statute is unambiguous," counsel nonetheless maintains that applying the moratorium on discharge to a debtor whose only debts were all excepted from discharge in the prior case leads to an "absurd" result.

The argued absurdity, however, is obscure. One can well conceive a rationale for the moratorium that meets a discernible policy goal, under the very facts here. The Defen-

---

4. Relief under § 1328(e) is severely limited. The request must be made within one year after the grant of discharge; the statute requires a showing that "such discharge was obtained by the debtor through fraud;" and the relief can be obtained only by a party that "did not know of such fraud until after [the] discharge was granted ." §§ 1328(e)(1)-(2).

dant proposed and obtained confirmation of a low-percentage composition plan. The plan was applied to only two claims, neither of which was subject to discharge under Chapter 7 at the time. The pendency of the Chapter 13 case gave her the protection of the automatic stay for five years. During that time, the holders of the two claims were restrained from enforcing them against her personally, outside of the administration of her Chapter 13 estate. The Defendant received this lengthy shelter at relatively low cost, as compared to the aggregate financial liability she had originally assumed. In the meantime, the seven-year moratorium on dischargeability under § 523(a)(8)(A) was running, and probably ended during the pendency of the case. Once that happened—nearly coincident in time with the Defendant's satisfaction of her modest Chapter 13 obligation—she immediately sought the broader relief of Chapter 7.

The timing of these processes suggests a calculated strategy of holding out in Chapter 13, at relatively low cost, to circumvent the purpose of § 523(a)(8)'s moratorium.[5] By this time, of course, there is nothing to say about the Defendant's use of Chapter 13; the educational lenders did not object, and the ameliorative provisions of Chapter 13 perforce applied to her case. The fact remains, though, that both moratoria are on the statute books with as much force and effect as the general provisions of Chapter 13. The legislative history of § 727(a)(9)[6] does not reveal whether it was intentionally coordinated with § 523(a)(8)(A); however, given the express goals of the latter, one certainly cannot say that applying the former according to its own tenor leads to an absurd result.

All told, then, the Plaintiff is entitled to the relief she seeks, and the Defendant is not entitled to a discharge under her current Chapter 7 filing.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED:

5. As to that purpose, *see In re Schirmer*, 191 B.R. 155, 159 (Bankr.D.Minn.1996).

6. H.R. REP. No. 595, 95th Cong. 1st Sess. 385 (1977); S. REP. No. 989, 95th Cong., 2d Sess. 385 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 6341. These two reports applied to different

1. The Plaintiff's motion for summary judgment is granted.

2. The Defendant's motion for summary judgment is denied.

3. The Defendant is denied a discharge under 11 U.S.C. § 727(a) in BKY 97–34797.

LET JUDGMENT BE ENTERED IN ACCORDANCE WITH TERM 3.

bills pending in the two Houses of Congress, and the bills clearly contemplated opposite outcomes on whether Chapter 13 discharge under a composition plan should trigger the moratorium. As evidenced earlier, on p. 2, the language actually passed was a compromise.