**In re Andrea CHISARI, Debtor.**

**Andrea CHISARI, Plaintiff,**

v.

**FLORIDA DEPARTMENT OF EDUCATION, OFFICE OF STUDENT FINANCIAL ASSISTANCE WAGE WITHHOLDING UNIT, Defendant.**

**Bankruptcy No. 94–03106–6J7.**
**Adv. No. 94–255.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

May 3, 1995.

Stanley Andrews, Titusville, FL, for debtor/plaintiff.

Richard F. Scott, Hollywood, FL, for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

KAREN S. JENNEMANN, Bankruptcy Judge.

This adversary proceeding came on for final evidentiary hearing on the Complaint to Determine Dischargeability of a Debt ("Complaint") filed by Andrea Chisari ("Debtor") against the Florida Department of Education ("Defendant"). In filing the Complaint, the Debtor seeks a determination that certain student loan obligations are dischargeable pursuant to 11 U.S.C. Section 523(a)(8). After considering the evidence presented, the arguments of counsel and applicable law, judgment is entered in favor of the Debtor.

The Debtor began attending the University of Florida as a full-time student in 1984 (Defendant's Exhibit 2). In 1985, Debtor received her bachelor's degree and began graduate work, expecting to receive her master's degree in 1989. Between February 1, 1984 and April 3, 1986, the Debtor executed a series of eight promissory notes in favor of Florida Federal Savings & Loan Association ("Lender") representing student loans (the "Loans") obtained while she was attending the University of Florida (Defendant's Composite Exhibit 1). The Loans totalled $15,000. The Loans were for educational purposes, and the funds were actually advanced. Differences exist in the forms of the notes executed by Debtor prior to 1985 (the "Earlier Notes") and those executed after 1984 (the "Later Notes").[1]

In the Earlier Notes, the Debtor agreed to "repay this loan in periodic installments during a repayment period that will begin no later than 6 months (the "grace period") after I either leave school or cease to carry at least one-half the normal academic workload...." In addition, the Earlier Notes provide "[t]he particular terms and conditions of repayment that apply to this loan will be set forth by the lender in a separate document known as a repayment schedule, that the lender will provide to [the Debtor] before the repayment period begins."

In the Later Notes, the Debtor agreed to "repay this loan: 1) in periodic installments during a repayment period that will begin no later than the end of my grace period; ... My grace period is that period of time which begins when either I leave school or stop carrying, at an eligible school ..., at least one-half the normal full-time academic work-

---

1. The Earlier Notes and the Later Notes are referred to collectively as the "Notes."

load required by the school. The Notice of Loan Guarantee and Disclosure Statement will identify the length of my grace period.... My due date will be indicated on the Repayment Schedule." Although neither party introduced a Notice of Loan Guarantee and Disclosure Statement, a representative of the Defendant testified that the grace period for all Notes ends six (6) months after the student ceases to be enrolled for at least half-time study.

Payment deferment options were available under the Notes upon the request of the Debtor and under certain circumstances. The Notes also require the Debtor to notify the Lender of any change in name, address or school enrollment status. The failure to notify the Lender of a change in name, address or school enrollment status constituted a default. Upon default, the Lender may demand payment in full under the Notes.

On November 26, 1986, the Debtor ceased being a full-time student. She did not notify the Lender of her change in school enrollment status. As a result of Debtor leaving school on November 26, 1986, her grace period under the Earlier Notes ended six months later on May 26, 1987.

In December, 1987, the Lender first learned that Debtor had withdrawn from the University of Florida. In response, in March, 1988, the Lender provided a repayment statement to Debtor which scheduled loan payments to begin on April 26, 1988. The Notes subsequently were assigned by the Lender to the Defendant.

Debtor has made no payments on the Loans. Although the Debtor offered to make payments of $20 to $25 per month on the Loans, the Defendant refused the offer and threatened to garnish Debtor's minimal wages. On June 13, 1994 (the "Petition Date"), Debtor filed her petition commencing this Chapter 7 case.

The Debtor argues that, pursuant to the terms of the Notes, payments on the Loans first became due on May 27, 1987, a date

more than seven years prior to the Petition Date. Therefore, the Loans are dischargeable under Section 523(a)(8)(A) of the Bankruptcy Code.

In response, the Defendant argues that, even though the Debtor's "repayment period" began on May 27, 1987, the Loans did not "first become due" until April 26, 1988, as specified in the repayment schedule, a date within seven years prior to the Petition Date. Defendant urges a distinction between the beginning of the "repayment period," which begins on the day following the end of the grace period, and the date on which payments "first became due" which is the language used in Section 523(a)(8) of the Bankruptcy Code. The issue [2] then is whether the Loans first became due more than seven years prior to the Petition Date.

Section 523(a)(8) of the Bankruptcy Code [3] governs the dischargeability of student loans. Section 523 provides, in relevant part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(8) for an educational ... loan, ... unless—

(A) such loan first became due more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and debtor's dependents;

11 U.S.C. § 523(a)(8) (1990).

The burden of proof in dischargeability cases involving student loans is split between the parties. The creditor has the burden of proving that a debt exists and was incurred for educational purposes. *See, D'Ettore v. Devry Institute of Technology (In re D'Ettore)*, 106 B.R. 715, 717 (Bankr. M.D.Fla.1989), *citing, In re Norman*, 25 B.R. 545, 548 (Bankr.S.D.Cal.1982). The debtor

---

**2.** The Debtor also alleges that excepting the Loans from discharge would impose an undue hardship on the Debtor under Section 523(a)(8)(B) of the Bankruptcy Code. Because the Loans are dischargeable under Section

523(a)(8)(A), it is unnecessary to consider the Debtor's claims of undue hardship.

**3.** 11 U.S.C. § 101 *et seq.* (1993).

has the burden of proving that such debt is outside the seven-year period prescribed by the statute. *Cf., Bachner v. People of the State of Illinois, ex rel. Illinois Student Assistance Commission (In re Bachner )*, 165 B.R. 875, 880–81 (Bankr.N.D.Ill.1994) (burden is on debtor to prove that the loan first became due more than 7 years from the date of filing). *Contra, D'Ettore, supra.* The burden of proof, therefore, is on the debtor to show by a preponderance of the evidence that the debt is subject to discharge and upon the creditor to show the existence of a debt incurred for educational purposes. *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 659–60, 112 L.Ed.2d 755 (1991).

No dispute exists that the Loans, totalling approximately $15,000 were incurred for educational purposes. The only pertinent dispute is whether the Loans first became due more than seven years prior to the Petition Date. Educational loans first become due when the first installment payment is due from the debtor. *Nunn v. State of Washington (In re Nunn )*, 788 F.2d 617, 618–19 (9th Cir.1986). In turn, the date the first installment payment is due is determined by reference to the underlying loan documents including the promissory notes. Interpretation of promissory notes is governed by state law. *Woodcock v. Chemical Bank, NYSHESC (In re Woodcock )*, 45 F.3d 363, 366 (10th Cir.1995), *citing, Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979) (property interests of the parties to a bankruptcy proceeding are "created and defined by state law"). In this case, Florida law controls.

In Florida, "[i]n construing a contract the object is to ascertain the intent of the parties by a reasonable construction." *Bennett v. Williams*, 149 Fla. 4, 6, 5 So.2d 51 (1941). The entire contract must be considered in determining the intention of the parties. *Florida Power Corporation v. City of Tallahassee*, 154 Fla. 638, 643, 18 So.2d 671, 674 (1944). In addition, courts in Florida are required to "place themselves, as near as possible, in the exact position of the parties to the instrument, when executed, so as to determine the intention of the parties, objects to be accomplished, obligations created, time of performance, duration, consideration,

mutuality and other essential features." *Id.,* 154 Fla. at 644, 18 So.2d at 674. Construction of written contracts is a question of law where the language is unambiguous, *Friedman v. Virginia Metal Products Corp.*, 56 So.2d 515, 516 (Fla.1952), and extrinsic evidence is admissible only if the contract is ambiguous on its face. *Carlon v. Southland Diversified Company*, 381 So.2d 291, 293 (Fla.Dist.Ct.App.1980), *reh'g denied, citing, Pearson v. Pearson*, 342 So.2d 1018 (Fla. Dist.Ct.App.1977).

The Earlier Notes are unambiguous as to date the first installment payment was due. The Debtor was obligated to make her first payment on May 26, 1987, which is six months after she ceased being a full-time student. As such, no extrinsic evidence is necessary or permitted.

However, the Later Notes are not as clear. The period of the Debtor's grace period is not expressly specified. As such, parol evidence is required. Florida recognizes a difference between latent and patent ambiguities. *Ace Electric Supply Company v. Terra Nova Electric, Inc.*, 288 So.2d 544, 547 (Fla.Dist.Ct.App.1973), *reh'g denied* (1974). A latent ambiguity is created where the language "is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence" necessitates "a choice among two or more possible meanings." *Id.* A patent ambiguity "appears on the face of the instrument, and arises from the defective, obscure or insensible language used." *Id.* Extrinsic evidence is admissible to cure a latent ambiguity, but not a patent ambiguity. *Id.*

The Later Notes are ambiguous to the extent that the grace period cannot be determined from their face. Such an ambiguity is latent. A representative of the Defendant testified that the grace period for all notes relating to educational loans originating in Florida expired six months after the borrower left school. The Debtor does not contest this assertion. Therefore, the date that the first payment was due on the Earlier Notes coincided with that for the Later Notes, May 26, 1987.

The Defendant submits that the Loans did not become due until the Lender sent a repayment schedule to the Debtor. In

essence, Defendant argues that the Debtor was not liable for repayment until billed. Such an argument is contrary to the express language in the Notes which provides express terms for repayment. Simply because the Lender did not send a repayment schedule to the Debtor until almost a year after the end of the grace period is irrelevant.

Further, Defendant argues the grace period should be extended because the Debtor failed to notify the Lender of her withdrawal from school. This acknowledged omission by the Debtor did not extend the grace period; rather, it created a default. The Defendant or the Lender could have separately chosen to enforce this default by pursuing collection of the full amount due. However, the Defendant never took this action.

Nor can the Defendant unilaterally extend the grace period given to the Debtor. *See, Whitehead v. State of Ohio, University of Cincinnati (In re Whitehead )*, 31 B.R. 381 (Bankr.S.D.Ohio 1983) (granting of deferment unilaterally by university for extraordinary circumstances invalid even though debtor failed to notify university of withdrawal from classes and change of address); *Brinzer v. Pennsylvania State University (In re Brinzer )*, 45 B.R. 831 (S.D.W.Va.1984) (terms of notes set beginning of repayment period and university had no right to unilaterally suspend repayment). Even where a deferment has been requested by a debtor, the lender has no authority to grant a deferment for a period longer than that requested. *Crumley v. Hope College (In re Crumley )*, 21 B.R. 170, 172 (Bankr. E.D.Tenn.1982). In this case, Debtor made no request for deferment of her payments. The Defendant simply cannot decide to extend the grace period to alter the date on which the first installment payment becomes due so that the debt is not subject to discharge under the Bankruptcy Code.

As such, the beginning of the repayment period, May 26, 1987, represents the date on which the Loans first became due regardless of whether the Debtor received a repayment schedule. This date is more than seven years prior to the Petition Date. It is unclear what actions, if any, the Lender or Defendant took to collect the Loans prior to the Petition Date. While such actions or omissions are not directly relevant, more than seven years elapsed between the Debtor's withdrawal from school and her bankruptcy filing. As the *Whitehead* court stated,

"[w]e do not condone [debtor's] failure to notify the university of his change of status and address, yet his failure did not leave the university powerless to act ... We are mindful of the burden this places on the university, but recognize that it is not only student borrowers who must act responsibly with taxpayer's money. Acting as a disbursement agency for ... insured loans carries with it the duty of acting properly and diligently in the collection of those loans." *Whitehead,* 31 B.R. at 385.

The Defendant has had ample opportunity to pursue its collection options prior to the filing of this bankruptcy case. The Defendant will get no additional time. The Debtor has met her burden of establishing that the Loans first became due more than seven years prior to the Petition Date. Accordingly, the debt represented by the Notes is discharged.

A separate judgment will be entered in accordance with the foregoing.

DONE AND ORDERED.