898 So.2d 69 (2005)
Sandra MALU, Petitioner,
v.
SECURITY NATIONAL INSURANCE COMPANY, Respondent.
Lazaro Padilla, et al., Petitioners,
v.
Liberty Mutual Insurance Company, et al., Respondents.
Nos. SC03-1327, SC03-1432.
Supreme Court of Florida.
March 10, 2005.
*70 Carlos Lidsky of Lidsky, Vaccaro and Montes, Hialeah, FL, Diane H. Tutt and Sharon C. Degnan of Diane H. Tutt, P.A., Plantation, FL, for Petitioner.
Beth T. Vogelsang of Barranco, Kircher, and Vogelsang, P.A., Miami, FL, for Respondent.
Nina K. Brown, Mark S. Shapiro and Jennifer Cohen Glasser of Akerman Senterfitt, Miami, FL on behalf of Liberty Mutual Insurance Company; and Doreen E. Lasch of Conroy, Simberg, Ganon, Krevens and Abel, P.A. on behalf of Urban Insurance Company of Pennsylvania, for Respondents.
PER CURIAM.
We have for review the consolidated cases of Malu v. Security National Insurance Co., 848 So.2d 373 (Fla. 4th DCA 2003), and Padilla v. Liberty Mutual Insurance Co., 870 So.2d 827 (Fla. 3d DCA 2003), in which the Fourth and Third District Courts of Appeal certified conflict with the decision of the Fifth District Court of Appeal in Hunter v. Allstate Insurance Co., 498 So.2d 514 (Fla. 5th DCA *71 1986). We have jurisdiction. See Art. V, § 3(b)(4).
The facts in each of the cases before us are substantially similar.

MALU
Petitioner Sandra Malu was insured under a private passenger automobile insurance policy issued by respondent Security National Insurance Company (Security National). After sustaining injuries in a motor vehicle accident, Malu made a claim for personal injury protection (PIP) benefits under her insurance policy. Among the benefits she sought was payment for the use of her personal automobile for travel to and from her medical providers. According to its usual and customary practice, Security National paid Malu a standard, predetermined amount of 34.5 cents per mile as reimbursement for the medical travel expenses.
Malu filed a class action complaint in the Circuit Court for Broward County, alleging that she was entitled to be paid more than 34.5 cents per mile for medical transportation costs. Malu sought declaratory relief and damages for breach of contract based upon a violation of the PIP statute of the Florida Motor Vehicle No-Fault Law, section 627.736, Florida Statutes (2001). Malu alleged that the mileage rate paid by her insurer for medical transportation costs was not reasonable and asserted that a reasonable mileage rate was in the range of 50 cents per mile.
The trial court dismissed the case with prejudice, finding as a matter of law that the 34.5 cents per mile paid by Security National to its insureds was reasonable. On appeal to the Fourth District, Malu argued that the trial court erred in concluding that the amount was reasonable as a matter of law, asserting that such a finding was not susceptible to determination as a matter of law but, rather, could only be made by the trier of fact.
The Fourth District agreed and found that the trial court had erred when it considered facts from outside of the complaint in its dismissal of the case. Despite this error, the Fourth District held that it was obligated to affirm the trial court if an alternative theory supported affirmance. Consequently, the district court affirmed the trial court's dismissal on the alternate basis that the medical transportation expenses were not compensable under the PIP statute. The court stated:
Our reasoning is based on the fact that the legislature specifically included transportation by ambulance, but did not mention any other type of transportation in the PIP statute. The mention of one type of transportation implies the exclusion of other types. Moonlit Waters Apartments, Inc. v. Cauley, 666 So.2d 898, 900 (Fla.1996) ("Under the principle of statutory construction, expressio unius est exclusio alterius, the mention of one thing implies the exclusion of another.").
Malu, 848 So.2d at 374.
The Fourth District also reasoned that when the Legislature has intended to provide coverage for automobile transportation to obtain medical treatment in a statutory scheme, it has specifically provided for payment of such expenses in the statutory language. As examples, the Malu panel cited to the statutory scheme that provided benefits for birth-related neurological injuries, section 766.31(1)(a), Florida Statutes (2002), and a workers' compensation statute that was repealed in 1993, section 440.13(6), Florida Statutes (1993). Malu, 848 So.2d at 374.
On this basis, the Fourth District held that the PIP statute did not include the transportation expenses sought by Malu in her claim and certified conflict with Hunter, *72 in which the Fifth District had expressly ruled that such expenses were compensable under the PIP statute. Malu, 848 So.2d at 374.

PADILLA
Petitioner Lazaro Padilla was insured under a private passenger automobile insurance policy issued by respondent Liberty Mutual Insurance Company (Liberty Mutual). Petitioners Eloy and Irma Rivero were likewise insured under a private passenger automobile insurance policy issued by respondent Urban Insurance Company of Pennsylvania (Urban).
After sustaining injuries in motor vehicle accidents, Padilla and the Riveros made claims for reimbursement of medical transportation costs under their respective insurance policies. According to their usual and customary practices, both Liberty Mutual and Urban paid their insureds a standard, predetermined amount of 32.5 cents per mile as reimbursement for the medical travel expenses.
Padilla and the Riveros filed separate class action complaints in the Circuit Court for Dade County against their respective insurers and asserted the same claims as Malu. In response to the complaints, both Liberty Mutual and Urban filed extensive motions to dismiss, arguing that the amounts they paid to their insureds in connection with transportation to obtain medical treatment were reasonable as a matter of law. They also argued that the complaints should be dismissed because the appropriate forum to decide the issue was not the trial court but, rather, the Department of Insurance (DOI), which the insurers claimed had "primary jurisdiction" over determinations of reasonable rates. The Padilla trial court dismissed Padilla's complaint without prejudice based on the "primary jurisdiction doctrine."[1] The Rivero trial court dismissed the Riveros' complaint with prejudice based on the primary jurisdiction doctrine and upon a finding that the 32.5 cents per mile paid by Urban to its insureds was reasonable as a matter of law.
The appeals of Padilla and the Riveros were consolidated in the Third District Court of Appeal. The insureds challenged (1) the trial courts' application of the primary jurisdiction doctrine, and (2) the Rivero trial court's conclusion that the amount paid by Liberty Mutual and Urban to their insureds for medical transportation costs was reasonable as a matter of law, a finding that the insureds asserted could only be made by the trier of fact.
The Third District held that all issues raised by the parties throughout the proceedings were moot because the Third District was in agreement with the Fourth District's analysis in Malu. Padilla, 870 So.2d at 829. The Third District concluded that if the Florida Legislature "deems it appropriate" to provide for medical travel benefits under the PIP statute, it can "do so specifically." Id. On that basis, the Third District held that the PIP statute does not include reimbursement for the transportation expenses sought by the insureds and certified conflict with Hunter. Id.[2]

*73 ANALYSIS
Before this Court, petitioners first argue that in Malu, the Fourth District misapplied the "tipsy coachman rule," which allows an appellate court to affirm a decision despite a finding of error in the lower court's reasoning as long as there is an alternative basis to justify affirming the decision. See, e.g., Dade County Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 644 (Fla.1999) ("[I]f a trial court reaches the right result, but for the wrong reasons, it will be upheld if there is any basis which would support the judgment in the record."). Petitioners assert that the Fourth District exceeded the scope of its appellate review when it affirmed the trial court's decision on the basis of an alternative theory which had not been raised in the trial court proceedings. The sole issue before the trial court was whether the mileage reimbursement rate offered by the insurers was sufficient. Petitioners argue that because respondents did not assert the issue of compensability at the trial court level, respondents waived their right to avail themselves of the issue on appeal.
In Radio Station WQBA, this Court held that the tipsy coachman rule does not limit an appellee to only those arguments that were raised in the lower court. In that decision, we stated:
If an appellate court, in considering whether to uphold or overturn a lower court's judgment, is not limited to consideration of the reasons given by the trial court but rather must affirm the judgment if it is legally correct regardless of those reasons, it follows that an appellee, in arguing for the affirmance of a judgment, is not limited to legal arguments expressly asserted as grounds for the judgment in the court below. It stands to reason that the appellee can present any argument supported by the record even if not expressly asserted in the lower court.... [A]n appellee need not raise and preserve alternative grounds for the lower court's judgment in order to assert them in defense when the appellant attacks the judgment on appeal.
Radio Station WQBA, 731 So.2d at 645. We have also stated that "a party who is content with the judgment below need not assign error in order to support that judgment and is not limited in the appellate courts to the theories of recovery stated by the trial court." MacNeill v. O'Neal, 238 So.2d 614, 615 (Fla.1970). Thus, even though Security National did not raise compensability as an issue before the Malu trial court, the Fourth District could apply the tipsy coachman rule.[3]
Petitioners next argue that even if the tipsy coachman rule was properly invoked, the alternative theory upon which *74 the district court justified affirmance was incorrect. We agree.
Section 627.736(1)(a), Florida Statutes (2003), states:

Medical benefits.  Eighty percent of all reasonable expenses for medically necessary medical, surgical, X-ray, dental, and rehabilitative services, including prosthetic devices, and medically necessary ambulance, hospital, and nursing services. Such benefits shall also include necessary remedial treatment and services recognized and permitted under the laws of the state for an injured person who relies upon spiritual means through prayer alone for healing, in accordance with his or her religious beliefs; however, this sentence does not affect the determination of what other services or procedures are medically necessary.
The purpose of the PIP statute is described as follows:
The purpose of ss. 627.730-627.7405 is to provide for medical, surgical, funeral, and disability insurance benefits without regard to fault, and to require motor vehicle insurance securing such benefits, for motor vehicles required to be registered in this state and, with respect to motor vehicle accidents, a limitation on the right to claim damages for pain, suffering, mental anguish, and inconvenience.
§ 627.731, Fla. Stat. (2003).
The statute is not reasonably interpreted to limit reimbursable expenses to "prosthetic devices and medically necessary ambulance, hospital and nursing services," as respondents suggest by invoking the statutory interpretation rule of expressio unius est exclusio alterius, meaning that the mention of one thing implies the exclusion of another. Respondents argue that the specific inclusion in the statute of ambulance transportation implies the exclusion of other types of transportation, such as the use of one's own automobile for transportation to medical providers. However, in light of the statute's wording calling for reimbursement of "all reasonable expenses" and its stated purpose to provide insurance benefits covering a broad range of medically necessary services, we conclude that the inclusion of ambulance expenses in section 627.736(1)(a) should not be read to exclude other reasonable travel expenses incidental to the medically necessary services set out in the statute.
Moreover, this Court has held that the language of the PIP statute should be interpreted liberally to effectuate the legislative purpose of providing broad PIP coverage for Florida motorists. See Blish v. Atlanta Cas. Co., 736 So.2d 1151, 1155 (Fla.1999); Gov't Employees Ins. Co. v. Novak, 453 So.2d 1116, 1119 (Fla.1984). Interpreting the statutory language to include such travel expenses is consistent with effectuating this legislative purpose.
This same question was answered seventeen years ago by the Fifth District Court of Appeal in Hunter under a previous version of section 627.736(1)(a).[4] In Hunter, *75 the court held that medical transportation expenses were reimbursable under the statute. In arriving at this holding, the Fifth District looked to this Court's decision in Mobley v. Jack & Son Plumbing, 170 So.2d 41 (Fla.1964). In Mobley, this Court held that a provision of the Workers' Compensation Law, ch. 440, Fla. Stat. (1963), requiring employer coverage of "such remedial treatment, care and attendance as the injury shall require," had to be interpreted to include reasonable travel expenses incurred by the employee in presenting himself at the place where treatment was provided. 170 So.2d at 47. As we stated in Mobley:
There can be no doubt that the Legislature intended that an injured employee be given medical treatment at the expense of the employer-carrier and without expense to himself. This legislative intent would not be fully accomplished if the employee were required to pay his own travel expenses necessarily incurred in obtaining medical treatment.
....
Considering the purposes of the Workmen's Compensation Act and the benefits to be given injured employees by its terms, we conclude that travel expenses necessarily incurred in enjoying the medical benefits provided by the Act are an incident of medical care and treatment. Therefore, the employer-carrier must either furnish such transportation or pay claimant the reasonable actual cost thereof.
Id. The Fifth District in Hunter then observed that the policy of Florida courts has always been to interpret the Florida Motor Vehicle No-Fault Act liberally in favor of the insured. Hunter, 498 So.2d at 515-16. On the basis of Mobley's rationale and the principle that such provisions should be construed broadly in favor of coverage, the Hunter court held that the cost of transportation to medical providers constitutes a "reasonable expense for necessary medical service," properly reimbursable under section 627.736(1)(a). Id. at 516.
In accord with Pardo, 596 So.2d at 666-67, the trial courts throughout Florida were bound to follow Hunter until the conflicting district court decision of Malu was decided in 2003. Therefore, the payment of these expenses was the settled law of Florida for seventeen years.
The compensability of medical transportation expenses under the PIP statute has never been questioned by the Legislature since Hunter was decided in 1986. In fact, the Legislature tacitly approved Hunter's construction of the statute when it reenacted the statute in 2001 with minor changes.[5] The Legislature is presumed to be acquainted with judicial constructions of a statute when it subsequently reenacts the statute. Collins Inv. Co. v. Metro. Dade County, 164 So.2d 806, 809 (Fla.1964). Thus, when the Legislature revised section 627.736, it presumably was aware of the Fifth District's decision in Hunter. Since the revised statute does not explicitly or implicitly reject Hunter's inclusion of medical transportation expenses as a covered benefit under the statute,[6] we must assume legislative approval *76 of the Fifth District's construction of the statute until the Legislature acts otherwise. See Goldenberg v. Sawczak, 791 So.2d 1078, 1081 (Fla.2001) ("Long-term legislative inaction after a court construes a statute amounts to legislative acceptance or approval of that judicial construction."); Burdick v. State, 594 So.2d 267, 271 (Fla.1992).
We therefore hold that the current PIP statute requires reimbursement of transportation costs incurred in connection with medical treatment that is reasonably medically necessary. We quash the Fourth District's decision in Malu v. Security National Insurance Co., 848 So.2d 373 (Fla. 4th DCA 2003), and the Third District's decision in Padilla v. Liberty Mutual Insurance Co., 870 So.2d 827 (Fla. 3d DCA 2003), and approve the holding and rationale of Hunter v. Allstate Insurance Co., 498 So.2d 514 (Fla. 5th DCA 1986). We remand Malu and Padilla to their respective district courts for further proceedings in accordance with this decision.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, and QUINCE, JJ., concur.
LEWIS, J., concurs with an opinion.
BELL, J., dissents with an opinion, in which CANTERO, J., concurs.
LEWIS, J., concurring.
I fully concur with the majority's opinion, and write separately only to address the statutory interpretation espoused by the dissent, which, in my view, is contrary to a logical, common sense interpretation of Florida's PIP statute. A holding that the no-fault statute does not provide for the reimbursement of transportation costs incurred to obtain reasonably necessary medical treatment would create an impractical result of encouraging injured citizens to rely on medical transportation systems or ambulance services (the payment for which is expressly provided for in the PIP statute), for transportation as opposed to using less costly methods of transportation to obtain healthcare when injured persons are unable to personally operate a vehicle. Indeed, some perfectly capable of operating their own vehicles may nonetheless rely on medical transportation systems and ambulance services to the extent they would be denied a nominal reimbursement as would be the case under the contrary interpretation of the PIP provisions. Such interpretation would increase the costs and expenses to the current system thousands fold. Contrary to Justice Bell's dissenting argument with regard to a purported simple resolution of transportation disputes, his position totally fails to accommodate the existing common practice of the non-emergency transport of persons by ambulance type vehicles for medical care which is commonly available in Florida. Businesses already exist in all parts of Florida specifically to provide this type of non-emergency ambulance transport service. Justice Bell's view would simply create another source of conflict and litigation as to the medical necessity of being transported to the source of medical care in this "no-fault" system. Transport for medical treatment is in my experience far more common than house-calls for in-home treatment by health care providers. The "no-fault" system does not call for an interpretation that would cause the need for increased litigation and increased costs to the system.
*77 One cannot obtain the medical care one reasonably needs without access to the health care provider. The majority's interpretation is logical and in conformity with a common sense interpretation of the purpose and language of the no-fault statute. Contrary to the interpretation proposed by the dissent, the PIP statute can and does require the reimbursement of transportation costs incurred in connection with medical treatment that is reasonably medically necessary. It must be remembered that the constitutional validity of the entire no-fault scheme is predicated upon an analysis that the statutory provisions at that time provided an adequate alternative remedy as a substitute for the loss of the underlying fundamental right in Florida of access to courts for redress of injuries. A statutory interpretation of these provisions in a manner that would reduce benefits even further and force the limited medical benefit reimbursement to be utilized for transportation expenses to obtain medically necessary care would be a reduction in medical benefits otherwise available under a common law recovery and push the no-fault concept even further toward invalidity. There is nothing in the majority's decision that would in any way extend benefits to extraneous items not directly related to medical care, as suggested by the dissent, which have not been recognized as recoverable elements of damage for injuries.
BELL, J., dissenting.
I cannot agree that a plain reading of the PIP statute at issue requires reimbursement of transportation costs incurred in connection with medical treatment that is reasonably medically necessary. Therefore, I would affirm the results in Malu and Padilla and disapprove the decision in Hunter.
Section 627.736(1)(a) specifically provides for the payment of "reasonable expenses for medically necessary medical, surgical, X-ray, dental, and rehabilitative services, including prosthetic devices, and medically necessary ambulance, hospital, and nursing services." § 627.736(1)(a), Fla. Stat. (2003) (emphasis added). Notably, the section refers to reasonable expenses for services and enumerates the types of services covered under the statute.
I do not believe the statute can reasonably be read to require payment of transportation costs incurred in connection with obtaining the listed services. By interpreting the statute to require payment of such transportation expenses (an expense necessarily incurred to obtain the medically necessary service), the majority's interpretation necessarily reads the statute to require payment of any other reasonable expenses incurred to obtain services expressly covered under the statute. In other words, the majority's reading of section 627.736(1)(a) does not limit the duty to pay expenses incurred "in connection with medical treatment" to transportation expenses. It also would dictate the payment of other incidental expenses reasonably incurred to obtain medically necessary services (e.g., child care). I believe such a result stretches the plain meaning of the statute.
As Justice Lewis elaborates in his concurring opinion, I agree that common sense dictates that the transportation costs at issue should be reimbursable under the no-fault scheme. I simply cannot find in the plain and unambiguous language of the statute that these costs must be reimbursed. However, I cannot agree with Justice Lewis's suggestion that my interpretation of the plain meaning of the statute would encourage citizens to use ambulance services or other medical transportation systems instead of their *78 own vehicles. The statute plainly addresses this situation. Section 627.736(1)(a) only authorizes payment for "medically necessary ambulance" services. The medically unnecessary use of ambulances would not be reimbursable.
Accordingly, I would affirm the result of the decisions in Malu and Padilla and hold that payment of transportation costs incurred in connection with obtaining reasonably necessary medical treatment is not mandated by section 627.736, Florida Statutes.
CANTERO, J., concurs.
NOTES
[1] See generally Flo-Sun, Inc. v. Kirk, 783 So.2d 1029, 1036 (Fla.2001).
[2] In a separate proceeding, Padilla filed a request with the DOI for a declaratory statement on whether it had primary jurisdiction to determine rates of reimbursement for automobile mileage payable under PIP insurance policies. The DOI dismissed the request, and Padilla appealed to the First District Court of Appeal. The First District affirmed the dismissal, holding that administrative agencies should not issue declaratory statements that could interfere with pending judicial proceedings. The First District further held that the DOI did not have statutory authority to set mileage reimbursement rates. Padilla v. Liberty Mutual Ins. Co., 832 So.2d 916, 920 n. 3 (Fla. 1st DCA 2002). In the present appeal, respondents do not assert the doctrine of primary jurisdiction as a basis for affirming the dismissal. Security National explicitly abandoned the claim, Liberty Mutual declared that primary jurisdiction is no longer an issue in this case, and Urban claimed that the question of jurisdiction over determining reasonable rates of reimbursement is a moot issue since the PIP statute does not provide for such benefit. We therefore decline to address it.
[3] We also note that had Security National argued in the trial court that the expenses were not covered by the statute, the trial court was bound to reject the argument. Pursuant to Hunter, discussed infra, the law in the State of Florida at the time of the Malu trial proceedings was that medical transportation costs were compensable under the statute. Hunter, 498 So.2d at 516. The trial court was bound to follow Hunter since it was the only district court decision that had pronounced a ruling on the issue. Pardo v. State, 596 So.2d 665, 666-67 (Fla.1992).
[4] Section 627.736(1)(a) was amended in 2001 to include the word "medically" before the word "necessary" in two places and to add the final clause that now appears in the statute. See ch.2001-271, § 6, at 2929, Laws of Fla. At the time Hunter was decided, section 627.736(1)(a), Florida Statutes (1985), provided:

(a) Medical benefits.  Eighty percent of all reasonable expenses for necessary medical, surgical, X-ray, dental, and rehabilitative services, including prosthetic devices, and necessary ambulance, hospital, and nursing services. Such benefits shall also include necessary remedial treatment and services recognized and permitted under the laws of the state for an injured person who relies upon spiritual means through prayer alone for healing, in accordance with his religious beliefs.
[5] See supra note 4.
[6] Respondents argue that the addition of the word "medically" before "necessary" in the 2001 revisions to section 627.736 refutes the argument that the Legislature approved of the Fifth District's interpretation of the statute. See ch.2001-271, § 6, at 2929, Laws of Fla. However, the legislative findings that accompanied the amendment demonstrate that the revisions were made in order to reduce "fraud, medically inappropriate over-utilization of treatments and diagnostic services, inflated charges, and other practices on the part of a small number of health care providers and unregulated health care clinics, entrepreneurs, and attorneys." See id. § 1, at 2923. Transportation expenses are not mentioned in the legislative findings.