902 So.2d 912 (2005)
CITY OF TAMPA, Appellant,
v.
Linda EZELL and Department of Transportation, Appellees.
No. 2D04-1916.
District Court of Appeal of Florida, Second District.
June 3, 2005.
*913 V. Stephen Cohen of Williams, Schifino, Mangione & Steady, P.A., Tampa, and Jack M. Larkin, Assistant City Attorney, Tampa, for Appellant.
David H. McClain of McClain & Associates, P.A., Tampa, for Appellee Department of Transportation.
No appearance for Appellee Linda Ezell.
KELLY, Judge.
Linda Ezell sued the City of Tampa (the City), the Department of Transportation (DOT) and Hillsborough County (the County) for injuries she sustained when she tripped and fell while walking on a sidewalk along Westshore Boulevard near the I-275 overpass. Her complaint indicates that she fell after she tripped on the lip of a "concrete apron of a drainage inlet structure" adjoining the sidewalk. According to Ezell, the apron was not flush with the sidewalk.
Each of the defendants moved for summary judgment arguing that the other defendants were responsible for maintaining the area where Ezell tripped and fell. The trial court entered summary judgment in favor of the County and DOT after finding that under an agreement between the City and the County, the City had assumed responsibility for maintaining sidewalks and inlet tops in the rights-of-way. The City appeals the final summary judgment in favor of DOT. We conclude that the trial court erred in finding that because there was an agreement between the City and the County, DOT was not responsible for maintaining the area where Ezell fell, and we reverse.
The record before the trial court establishes that the City and the County entered into an "Inter-Jurisdictional Road Maintenance and Operation Agreement" (the Agreement) under which the City agreed to "perform certain of the County's *914 maintenance and operational responsibilities on certain portions of the `County Road System' that are located within the City." The portion of Westshore Boulevard where Ezell fell is one of those roads. The Agreement allocates various responsibilities between the City and the County. The City is charged with, among other things, "maintaining sidewalks, bikeways and any other ways, other than the roadbed, open to the public use within the rights-of-way" and is "operationally responsible" for storm sewer maintenance, including inlet tops, on all county roads within the City.
In its motion for summary judgment, DOT argued that it was entitled to summary judgment because under the Agreement the City was responsible for maintaining sidewalks and inlet tops and Ezell tripped on an inlet top adjoining a sidewalk within a DOT right-of-way. The trial court agreed, finding that the Agreement was clear and unambiguous, that under the Agreement the City was responsible for sidewalks and storm drains, and that accordingly, it was responsible for the area where Ezell fell.
The interpretation of a contract is a question of law and an appellate court is not restricted in its review powers from reaching a construction contrary to that of the trial court. Gemini Ventures of Tampa, Inc. v. Hamilton Eng'g & Surveying, Inc., 784 So.2d 1179 (Fla. 2d DCA 2001). In this case, the final summary judgment was based on the trial court's interpretation of the contract. That interpretation was flawed.
The trial court found that because under the Agreement the City had responsibility for sidewalks and inlet tops, it necessarily had responsibility for the area where Ezell fell. DOT acknowledged that the area where Ezell fell is within its right-of-way. While the Agreement places with the City the responsibility for sidewalks in the rights-of-way, to interpret this to include DOT's rights-of-way as well as the County's ignores the purpose of the Agreement.
In construing a contract, the intent of the parties should be determined from the words of the contract as a whole. Fla. Power Corp. v. City of Tallahassee, 154 Fla. 638, 18 So.2d 671 (1944). The court also should consider the conditions and circumstances surrounding the parties and the objects to be obtained in executing the contract. Id. at 674. Here, the Agreement allocates what were formerly the County's responsibilities between the County and the City. It does not purport to allocate responsibility for any areas for which DOT may have been responsible. Read in the context of the entire Agreement, and taking into consideration what the parties sought to accomplish by entering into the Agreement, the reference to "rights-of-way" cannot reasonably be interpreted to mean rights-of-way for which DOT was responsible as well as those for which the County had responsibility.
On appeal, DOT has relied on a different argument to support its contention that it is not responsible for the area where Ezell fell.[1] Rather than relying on *915 the Agreement, it argues that pursuant to section 334.03(23), Florida Statutes (1997), the County had been responsible for maintaining the road, including associated sidewalks and drains, as a part of the county road system. DOT argues that as a result, when the City assumed the County's responsibilities, it became responsible for the sidewalks and drains associated with the road.
The record before the trial court, however, does not support DOT's assertion that the County had been responsible for anything within DOT's rights-of-way, including sidewalks and drains associated with county roads. On the contrary, DOT submitted an affidavit from its engineer responsible for maintaining I-275 where it passes over Westshore. In it, the engineer explains that in situations where a state highway crosses over a county road, there has been a long-standing agreement between state and local governments that DOT is responsible for "everything" inside the limited access fence and all of the structures crossing the county road, including the slope paving; everything else remains the responsibility of the County.
The record also contains an affidavit from the former supervisor of street engineering for the City which states that the inlet top and sidewalk where Ezell fell were constructed by DOT, were within the limits of the interchange of I-275 and Westshore Boulevard, and were controlled by DOT. He also indicated that DOT was responsible for maintenance in that area unless there was an agreement to the contrary and that as far as he knew, there was no such agreement. Additionally, the construction supervisor for the City of Tampa Transportation Division, the City's supervisor for street engineering, and the director of the County's transportation maintenance division of the Public Works Department each averred that the area where Ezell fell was within DOT's right-of way, that all maintenance within the interchange of I-275 and Westshore Boulevard was DOT's responsibility, and that they were familiar with the Agreement between the City and the County and that it did not apply to DOT rights-of-way. Thus, the record does not conclusively establish that the County had been responsible for the area where Ezell fell and then passed that responsibility to the City under the Agreement. To the contrary, the affidavits filed in this case tend to establish that DOT had the responsibility to maintain its own rights-of-way and everything within them.
Accordingly, we reverse the final summary judgment in favor of DOT and remand for further proceedings.
Reversed.
FULMER and WALLACE, JJ., Concur.
NOTES
[1] Generally, a claim that is not raised in the trial court cannot be considered on appeal. Malu v. Sec. Nat'l Ins. Co., 898 So.2d 69 (Fla.2005) (citing Dade County Sch. Bd. v. Radio Station WQBA, 731 So.2d 638 (Fla. 1999)). There is an exception to this rule, however. In considering the propriety of the trial court's decision, the appellate court may affirm the trial court if there is any theory or principle of law that would support the trial court's decision. In arguing for an affirmance, the appellee is not limited to legal argument expressly asserted below and can present any argument supported by the record even if not expressly asserted in the trial court. Id. at 73.